**KURTZ CONCRETE, INC., a Missouri Corporation, Respondent,**

v.

**James R. SPRADLING, Director of Revenue, State of Missouri, Appellant.**

### No. 59919.

Supreme Court of Missouri,
En Banc.

Jan. 9, 1978.

Rehearing Denied Feb. 8, 1978.

John D. Ashcroft, Atty. Gen., Jefferson City, J. Michael Davis, Asst. Atty. Gen., for appellant.

Dale L. Rollings, St. Charles, for respondent.

DONNELLY, Judge.

The issue on this appeal is whether hauling charges for redi-mix concrete are taxable under the Missouri Sales Tax Law. §§ 144.010–144.510, RSMo 1969. Kurtz Concrete, Inc., taxpayer, paid $9,512.77 for the period August 1, 1973, to July 31, 1974, under protest to the Department of Revenue, as sales tax on hauling charges on delivered concrete for that period.

Redi-mix concrete is composed of cement, coarse and fine aggregates, water, and possibly suitable add mixtures. Before the materials are added together in trucks at Kurtz' plant, they are kept in bins above a weigh batcher. Approximate amounts of materials are dispensed concurrently to make up concrete of the quality and quantity specified by customers and are mixed in the concrete trucks. Once materials are added together in the truck, they cannot be returned to stock. The materials begin to mix as soon as they are added together with water in the truck. It takes approximately five minutes for the materials to become concrete after they are placed on the truck. Kurtz' trucks are usually still at the loading bin during this five-minute mixing process. The maximum amount of time during which the concrete is in useable form is several hours. Although the concrete truck turns enroute to its destination, the turning does not contribute to the manufacturing process, and may be detrimental to some types of mixtures. The truck turns enroute to insure that the materials do not separate. If the concrete cannot be used within several hours for some reason, it must be dumped as it is useless. Once concrete is poured and sets, it is not removable without the use of a jackhammer or bulldozer. The bulk of concrete sold by Kurtz is used for footings, foundations and flatwork. When a truck reaches the jobsite it is positioned at the direction of the contractor and then dumps the concrete, usually into a form.

E. Eric Kurtz, president of Kurtz Concrete, Inc., testified that his company quotes prices upon the request of customers, 95% of which requests are verbal. Most of Kurtz's customers are contractors. Material and delivery charges are quoted separately in every case, and are separately specified upon billing. At the time of hearing in this case, the delivery charge for concrete was $5.00 per cubic yard. Mr. Kurtz testified that computing the charge for delivery on cubic yards of concrete rather than on mileage was a more accurate means for Kurtz to recover its actual costs for delivery due to the variables involved in each job. The variables taken into account to compute the delivery charge are mileage, the time the truck is on the job, night hauling, small loads, and special equipment or maintenance required on the truck. Profit is not designed into the hauling charges, and no discount is figured on hauling charges as it may be on materials. A "part-load" charge is made for small amounts sent out in trucks. This charge is

added to the regular hauling charge. About 97% of the concrete sold by Kurtz is delivered by Kurtz; only a small percentage of customers pick up their own concrete. If a customer comes with his own redi-mix truck, the materials are simply dumped into it. If the customer comes without such a truck, Kurtz mixes the concrete on its own truck, and then dumps it into the customer's truck. There is no hauling charge when a customer picks up his own concrete.

Mr. Kurtz testified that the materials are identified as the customer's when they are put in the truck. If a customer cancels his order before the materials are weighed and put in the truck, the order is simply cancelled and the customer is not charged. If material has already been placed in the truck, an attempt is made to resell it for the customer who originally ordered it. If the concrete on the truck cannot be diverted to another customer, it is dumped and the original customer is billed. It is understood by contractors in the industry that once the materials are on the truck the concrete is their product. If an order is cancelled and the concrete on the truck is sold to another customer who wants a lower grade, the original customer is billed for the difference in price between the higher grade concrete and the lower grade desired by the customer to whom it was diverted. The original customer also pays hauling charges. If the truck has left Kurtz' plant and is enroute before the concrete is diverted to a second customer due to cancellation, both the original customer and the diverted-to customer may have to pay hauling charges for that load. Should a load not be delivered due to some factor other than cancellation, Mr. Kurtz did not know if the customer would be billed if the concrete had already been placed on the truck. Mr. Kurtz stated that this situation had not arisen to his knowledge. Various concrete contractors testified that it was understood within the industry that once concrete was on the truck, if an order was cancelled, the original customer had to pay for the concrete if it could not be diverted. These contractors did not know what would happen if the concrete were not delivered for some reason other than cancellation. However, one stated that he would not expect to be billed for it.

The hearing officer for the Department of Revenue made the finding that the delivery of redi-mix concrete is an integral part of the sale of concrete and that ownership or title to the concrete passes at the time of delivery on the jobsite. The hearing commissioner further found that the sale of building supplies is taxable, and that hauling charges are includable in the taxpayer's "gross receipts" as a service incident to the sale of concrete under Section 144.010(1)(4). The circuit court reversed the findings of the Department of Revenue and found as a matter of law that title to the redi-mix concrete passes at the time of introduction of the ingredients into the rotating drum at the batch plant. The circuit court further found that the delivery of redi-mix concrete is a separate delivery service which is not a part of the sale made by petitioner to its customer and is not includable in the "gross receipts" and therefore not subject to sales tax. The circuit court found that hauling does not constitute a "sale at retail" under § 144.010(1)(9).

In our opinion, the issue in this case narrows to the question: When does title to the concrete pass from Kurtz to its customers? We reach this conclusion because of the wording of the sales tax statutes. Section 144.020 states that a tax is levied upon all sellers for the privilege of engaging in the business of selling tangible personal property or rendering taxable service at retail in this state. Section 144.010(1)(9) defines "sale at retail" as "any transfer made by any person engaged in business . . . of the ownership of, or title to, tangible personal property to the purchaser . . . ." Thus, the taxable event is the passage of title or ownership. Tax is levied on "gross receipts", defined as "the total amount of the sale price of the sales at retail including any services other than charges incident to the extension of credit that are a part of such sales". § 144.010(1)(4). If services are rendered before title passes and these services are included

in the amount of the sale price, then the charge for these services is taxable.

Appellant contends that title does not pass until Kurtz delivers the concrete to its customers because Kurtz maintains control of the concrete and the buyer is not obligated to pay until delivery is made of concrete in useable form. Thus, he contends, title and risk of loss remain in Kurtz until delivery, and, since delivery is an integral part of the sale of the concrete, hauling charges are therefore includable in gross receipts. Respondent counters with the contention that title passes when the ingredients are placed on the concrete-hauling trucks because by trade practice the purchasers then understand it is their concrete at that point and know they are obligated to pay for it. Further, respondents contend the hauling charges are not an integral part of the sale of the concrete because these charges are always segregated and no hauling charge is imposed if the concrete is not delivered.

Both appellant and respondent rely on the Uniform Commercial Code to support their contentions as to when title passes. Section 400.2–401 is the Code section on passage of title. It states:

"400.2–401 Passing of title—reservation for security—limited application of this section

"Each provision of this article with regard to the rights, obligations and remedies of the seller, the buyer, purchasers or other third parties applies irrespective of title to the goods except where the provision refers to such title. Insofar as situations are not covered by the other provisions of this article and matters concerning title become material the following rules apply:

"(1) Title to goods cannot pass under a contract for sale prior to their identification to the contract (section 400.2–501), and unless otherwise explicitly agreed the buyer acquires by their identification a special property as limited by this chapter. Any retention or reservation by the seller of the title (property) in goods shipped or delivered to the buyer is limited in effect to a reservation of a security interest. Subject to these provisions and to the provisions of the article on secured transactions (article 9), title to goods passes from the seller to the buyer in any manner and on any conditions explicitly agreed on by the parties.

"(2) Unless otherwise explicitly agreed title passes to the buyer at the time and place at which the seller completes his performance with reference to the physical delivery of the goods, despite any reservation of a security interest and even though a document of title is to be delivered at a different time or place; and in particular and despite any reservation of a security interest by the bill of lading

"(a) if the contract requires or authorizes the seller to send the goods to the buyer but does not require him to deliver them at destination, title passes to the buyer at the time and place of shipment; but

"(b) if the contract requires delivery at destination, title passes on tender there.

"(3) Unless otherwise explicitly agreed where delivery is to be made without moving the goods,

"(a) if the seller is to deliver a document of title, title passes at the time when and the place where he delivers such documents; or

"(b) if the goods are at the time of contracting already identified and no documents are to be delivered, title passes at the time and place of contracting.

"(4) A rejection or other refusal by the buyer to receive or retain the goods, whether or not justified, or a justified revocation of acceptance revests title to the goods in the seller. Such revesting occurs by operation of law and is not a 'sale'. (L.1963 p. 530 § 2–401)."

We believe the intent of the parties as to when title passes should govern here, as stated in the Code, despite the fact that Kurtz is expected to deliver useable concrete to its customers. Cases from other jurisdictions, relied on by appellant to sub-

**862**

stantiate his argument that the hauling charges are taxable, would seem to support respondent's position on this set of facts.

In *O'Kelley-Eccles Company v. State*, 160 Cal.App.2d 60, 324 P.2d 683 (1958), a case decided under the Uniform Sales Act, the court held that the hauling charges on concrete blocks were taxable because the seller was obligated to deliver the blocks, although material and hauling charges were stated separately. The court stated that the passage of title depends on the intention of the parties, and that in the absence of any evidence to the contrary the court would assume title passed upon delivery. The court specifically noted that the seller failed to prove by custom or usage of trade that title passed earlier than on delivery. In the Kurtz situation, Kurtz introduced evidence that both parties to a sale considered the concrete to be the buyer's upon the placing of the materials in the truck.

In another California case, *Select Base Materials, Inc. v. Board of Equalization*, 51 Cal.2d 640, 335 P.2d 672 (Banc 1959), the hauling charges for granite were held to be taxable because it was the implied intention of the parties that title did not pass until delivery. Again, there was no testimony that title passed before delivery, but witnesses stated that they were interested only in the price of the delivered granite. In the Kurtz situation, there is testimony that both parties to a sale regarded the concrete as belonging to the customer once it was placed on the truck, at least insofar as payment then being required of the customer.

Other cases from foreign jurisdictions have likewise held hauling charges to be taxable when the delivery of materials was an integral part of the sale of materials and no contrary intention appeared between the parties that title was to pass before delivery. The case of *East Brewton Materials, Inc. v. State Department of Revenue*, 45 Ala.App. 584, 233 So.2d 751 (1970), is most nearly on point to the fact situation at hand. In *East Brewton*, sales tax on hauling charges for sand, gravel and plant mix asphalt was in dispute. Evidence showed

that the seller delivered part of its products to customers' jobsites. The seller invoiced these sales stating separate charges for materials and delivery. Under an Alabama Department of Revenue regulation, hauling charges were designated taxable when the delivery was made by the seller. The Alabama Court of Appeals found the revenue regulation to be reasonable and held the hauling charges taxable, noting the testimony indicated that title did not pass until delivery was effected.

■ We believe that where the seller is to deliver the property at, or transport it to, a particular place, title ordinarily will not pass until the property is delivered to the buyer or reaches the agreed place; but this is not always true, and the title will pass notwithstanding the seller is to make such delivery if such is the intention of the parties. Since both seller and buyers here have indicated by their testimony that the buyers are required to pay for the concrete as soon as it enters the truck, we must conclude that title then passes. We hold that no sales tax is applicable to the hauling charges.

The judgment is affirmed.

All concur.