**SOUTHERN RED–E–MIX CO., et al., Appellants,**

v.

**DIRECTOR OF REVENUE, STATE OF MISSOURI, Respondent.**

No. 77268.

Supreme Court of Missouri, En Banc.

Feb. 21, 1995.

James B. Deutsch, Jefferson City, for appellants.

Jeremiah W. (Jay) Nixon, Atty. Gen., Evan J. Buchheim, Asst. Atty. Gen., Jefferson City, for respondent.

HOLSTEIN, Judge.

Southern Red–E–Mix Company, Rivers Bend Red–E–Mix Company, Howard Readymix Concrete Company, Midwest Ready Mix Company, Inc., and Northland Readymix, Inc. (the companies) seek review of a decision of the Administrative Hearing Commission (AHC) denying them a refund of sales taxes. The years for which refunds are sought range from 1989 through 1993. The AHC concluded that the delivery of concrete is part of the sale within the meaning of § 144.010.1(3),[1] it is taxable, and the companies are not entitled to deduct delivery expenses from gross receipts. A decision of the AHC involving the construction of revenue laws falls within the jurisdiction of this Court. *Mo. Const. art. V, § 3.* Decision affirmed.

The companies were in the business of selling ready-mix concrete, which is prepared by placing a mixture of concrete, sand, rock, and water in a mixing truck. Upon receipt of an order for concrete, each of the companies would quote a price per cubic yard for delivered concrete. Delivery charges were never stated separately. Rarely, if ever, did a customer want undelivered concrete. Sales of undelivered concrete were only done as a courtesy to the customer. Once the materials were placed in the truck and water added, the concrete must be used within several

---

1. Unless otherwise specified, all references to statutes are to RSMo 1994.

hours. Also, concrete is custom mixed to the specifications of the individual customer. Therefore, the companies' witnesses explained that "title" passes to the customers and they are liable to pay for the concrete once the concrete materials are placed in the truck. However, the companies would not charge a customer if the concrete was not delivered through no fault of the customer. The companies owned or leased the trucks used to mix and deliver the concrete and paid other expenses associated with the trucks. The drivers were employees of the companies.

Section 144.020 imposes a sales tax on the retail sale of tangible personal property or a taxable service. Sellers are required to report their gross receipts and remit sales tax based on the gross receipts. *§ 144.021.* Gross receipts are "the total amount of the sale price of the sales at retail including any services other than charges incident to the extension of credit that are a part of such sales made by the businesses herein referred to...." *§ 144.010.1(3).*

The companies argue they erroneously included delivery costs when reporting their gross receipts for the sale of concrete. They now claim a refund for that portion of the remitted tax. The companies contend that in the ready-mix concrete industry, title passes when the concrete is mixed in the truck at the seller's plant. The companies claim that because the taxable event for sales tax purposes is when passage of title occurs, sales tax should not be paid on delivery expenses occurring thereafter.

In support of their argument, the companies rely on *Kurtz Concrete, Inc. v. Spradling,* 560 S.W.2d 858 (Mo. banc 1978), and *L & M Ready Mix Co. v. Director of Revenue,* No. 90–000246RS (Mo.Admin. Hearing Comm., Feb. 15, 1991). In *Kurtz* this Court discussed gross receipts and concluded that "[i]f services are rendered before title passes and these services are included in the amount of the sale price, then the charge for these services is taxable." 560 S.W.2d at 860–61. However, the Court also stated:

> [W]here the seller is to deliver the property at, or transport it to, a particular place, title ordinarily will not pass until the property is delivered to the buyer or reaches the agreed place; but this is not always true, and the title will pass notwithstanding the seller is to make such delivery if such is the intention of the parties.

560 S.W.2d at 862. This Court held in *Kurtz* that, because both the seller and the buyers testified that buyers are required to pay for their concrete when it enters the truck, title passes then and no sales tax is applicable to delivery charges. *Id.* However, in *Kurtz* the seller quoted separately material and delivery charges in every case and separately specified those charges on the billing. *Id.* at 859. *Kurtz* cannot be read to establish an industry-wide rule prohibiting taxation of delivery charges for concrete.

In *L & M Ready Mix Co.,* the AHC found that a ready-mix concrete seller did not have to remit sales tax for delivery charges associated with its concrete sales. Decisions of the AHC are entitled to no deference as legal precedent in this Court. *See Mo. Const. art. V, § 2.* In any event, *L & M* did not purport to preclude a sales tax of all delivery charges on concrete.

Since *Kurtz,* this Court has addressed in other cases the issue of whether a service is part of the sale for purposes of assessing sales or use tax. In *May Department Stores Co. v. Director of Revenue,* 791 S.W.2d 388 (Mo. banc 1990), this Court, relying on *Kurtz,* noted that the intention of the parties is the guiding factor in determining whether services are to be included as part of the sale. *Id.* at 389. The issue in *May Department Stores* concerned whether shipping charges were part of the sale of merchandise for the assessment of use tax. This Court decided that the parties did not intend to include shipping charges as part of the sale because the shipping charges were stated separately and never billed as part of the merchandise. *Id.*

In *Oakland Park Inn v. Director of Revenue,* 822 S.W.2d 425 (Mo. banc 1992), this Court considered whether gratuities charged for banquets were to be included as part of the sale. The customers in *Oakland Park* were required to sign a contract providing for payment of 16% gratuity based on the

price of the food and drink. The hotel gave the customer an invoice that stated separately charges for the gratuity and charges for food and drink. *Oakland Park* did not collect or remit sales tax on the amount charged as a gratuity. This Court used two inquiries to decide the issue in that case: "(1) Is the gratuity really 'mandatory?'; and (2) Is the amount collected and paid to the servers necessary to bring their wages up to the minimum federal wage or the local market rate?" *Id.* at 426. Each inquiry was answered affirmatively there and the assessment of sales tax was upheld.

Most recently, this Court considered the issue of including services as part of the sale in *Brinson Appliance, Inc. v. Director of Revenue,* 843 S.W.2d 350 (Mo. banc 1992). There it was held that sellers of appliances owed no sales tax for delivery and installation of household appliances. The sellers did not own or operate the delivery trucks, the buyers could choose to have the purchased item delivered or taken at the store, delivery services were provided by independent carriers, the seller collected payment for delivery charge with the delivery charge separately stated on the invoice, and the carrier assumed the risk of loss after the appliance was picked up from the store. In *Brinson* this Court explained that *Kurtz,* "made clear that the intent of the parties is controlling in determining whether delivery charges are a part of the sale, and in determining the parties' intent[,] the point at which title passed is a highly relevant consideration." 843 S.W.2d at 352. However, this Court declined to construe *Kurtz* as holding that the time of passage of title is the sole factor in determining the intent of the parties. The fundamental question is "whether the parties to these transactions intended the delivery charge to be part of the sale." *Id.* This Court upheld the AHC's determination that delivery charges were not intended by the parties to be part of the sale because the customer could choose the cost and means of delivery, the seller derived no financial benefit from the delivery, and the seller undertook no risk for damage or loss during delivery. *Id.*

As explained in *Brinson,* the appropriate consideration is whether the parties intended the delivery charge to be part of the sale. From our review of these cases, it is clear that a number of factors are relevant in that determination. Those factors include when title passes from the seller to the buyer, whether delivery charges are separately stated, who controls the cost and means of delivery, who assumes the risk of loss during delivery, and whether the seller derives financial benefit from the delivery. The Court does not mean to suggest that this is an exclusive list of factors. The weight to be given any factor in determining what the parties intended is largely a function of the fact finder.

In this case, the cost and means of delivery are controlled predominantly, if not exclusively, by the seller. The sellers operate the delivery trucks, pay the drivers, and quote the prices for delivered concrete. On the rare occasion that a customer wanted undelivered concrete, special arrangements were necessary. Although there was evidence to the contrary, the AHC found that the seller bore the risk of loss during delivery. Because the sellers used their own trucks and drivers and no separate charge was assessed for delivery, it is likely that the sellers derived economic benefit from the delivery. The record indicates that the sellers and the customers never negotiated delivery expense and no separate charge was imposed for delivery. On these facts, the AHC found that the ready-mix customers were only interested in delivered concrete and the delivery expense was simply one of the costs factored into the companies' sales price for the concrete. The AHC concluded that the parties intended for delivery to be part of the sale. That determination is supported by the law and competent and substantial evidence on the whole record. *See* § 621.193 and *House of Lloyd, Inc. v. Director of Revenue,* 824 S.W.2d 914, 916 (Mo. banc 1992).

The companies in their second point attack the AHC's finding that the companies made no charge for delivery services and had no gross receipts for rendering those services. As noted above, the failure to state

separately the sales price and delivery charges is not fatal to a claim that delivery services are not subject to sales tax. *See Oakland Park*, 822 S.W.2d at 426. The companies have attempted to identify a delivery charge from historical records of their costs. However, the AHC found that the record demonstrated no credible evidence that the companies ever identified a separate delivery charge to their customers. Therefore, it is reasonable to conclude that the parties intended the delivery service to be part of the sale. The AHC determination is supported by competent and substantial evidence.

The decision of the AHC is affirmed.

COVINGTON, C.J., and BENTON, THOMAS, LIMBAUGH, and ROBERTSON, JJ., concur.

PRICE, J., not sitting.