

# SUPREME COURT OF MISSOURI
## en banc

ALBERICI CONSTRUCTORS, INC.,    )
    )
             Appellant,    )
    )
v.    )    No.  SC93771
    )
DIRECTOR OF REVENUE,    )
    )
             Respondent.    )

PETITION FOR REVIEW OF A DECISION OF THE
ADMINISTRATIVE HEARING COMMISSION
The Honorable Marvin O. Teer, Jr., Commissioner

*Opinion issued January 13, 2015*

Alberici Constructors, Inc., seeks review of a decision of the administrative hearing commission (AHC) denying Alberici's claim for a refund of use taxes paid. In its petition for review, Alberici asserts the AHC erred in finding it owed use taxes on Alberici's out-of-state rentals of cranes and a welder because the cranes and welder are "materials" that were used solely to construct or install manufacturing equipment at a new cement manufacturing plant in Missouri and, therefore, exempt from the imposition of use tax under section 144.030.2(5).[1] Alberici also asserts the AHC erred in finding Alberici owed use taxes on a charge for the delivery of one of the cranes to the manufacturing job site.

---

[1] Unless otherwise indicated, all statutory references are to RSMo Supp. 2011. Section 144.030.2(5) has been renumbered section 144.030.2(6) but has not otherwise changed. *See* section 144.030.2(6), RSMo Supp. 2013.

This Court finds Alberici owed use taxes on the rentals of the cranes and the welder because the legislature did not intend the term "materials" in section 144.030.2(5) to include cranes and welders. The Court further finds that the delivery service was a part of the crane rental and that the delivery charge was subject to the assessment of use taxes. Accordingly, the decision of the AHC is affirmed.

## Factual and Procedural Background

In 2006, Alberici entered into a joint venture to build a new cement manufacturing plant in Missouri for Holcim (US), Inc. Under the agreement, Alberici was responsible for installing and constructing the steel supports and cement manufacturing equipment provided by Holcim. To install and construct the equipment, Alberici rented five "massive industrial cranes" from three out-of-state vendors. The rental agreements with each vendor referred to the cranes as "equipment." Additionally, Alberici rented a welder. The invoice for the welder was styled "MACHINE RENTALS." Alberici paid $440,075.39 for the rental of the cranes and the welder.

Included in the $440,075.39 total cost was a $15,000 charge paid to Bulldog Erectors, Inc., for the transportation of a crane rented from Bulldog Erectors to the manufacturing job site. The rental agreement for that crane, which the parties signed on November 4, 2008, provided:

> **6. TRANSPORTATION:**
> Inbound Transportation: $15,000.00
> Outbound Transportation: $15,000.00
>
> **\*Receive, unload, assemble, disassemble and load out is by customer.**

Transportation: Lessee will arrange for and pay all shipping and freight from the shipping point to the job site . . . and returned to the return point, including but not limited to, demurrage, unloading, assembly, disassembly, load-out, handling, packing, crating, documentation, import and export clearances and transportation. . ..

\* \* \*

**13. LOSS OR DAMAGE: 13.1** All risk of loss or damage to Equipment, regardless of cause, . . . during the term of the rental . . . or during transportation of the Equipment, shall be with Lessee . . ..

Bulldog Erectors billed Alberici for the $15,000 delivery charge separately from the rental charges, and Alberici paid the charge on November 20, 2008.

For the tax filing periods for March 1, 2008, through March 31, 2009, Alberici remitted $18,593.21 in Missouri and local use taxes on the rentals and delivery charge.[2] On May 11, 2010, Holcim executed an exemption certificate for "rental cranes used solely for the installation and construction of manufacturing machinery and equipment." On May 19, Alberici relied on this exemption certificate to seek a use tax refund from the department of revenue for use taxes paid on the crane and welder rentals and the $15,000 delivery charge.

The director of revenue denied the refund request, and Alberici sought the AHC's review of the director's decision. During a hearing before the AHC, Alberici presented evidence regarding the Holcim plant, the cement manufacturing process, and the cranes and welder at issue. Alberici also presented the testimony of its vice president, who worked as the deputy project director for the Holcim plant. The vice president testified

---

[2] Alberici's refund claim initially was for $35,066.55 and included use taxes on the rentals of additional cranes. Alberici later reduced its claim to $18,593.21.

that freight charges are normally separate from rental charges and that he believed Alberici had the option of selecting a third-party carrier to transport the crane from Bulldog Erectors to the job site. The rental agreements with Bulldog Erectors and the other two vendors also were admitted into evidence. After the hearing, the AHC ruled in favor of the director. The AHC found that large industrial cranes and welders are not "materials" exempt from use taxes under section 144.030.2(5). It also found that, while the agreement between Alberici and Bulldog Erectors separately stated the $15,000 delivery charge, the 16-day time frame between the parties entering into the rental agreement and Alberici paying the delivery charge indicated that the parties intended at the time of contracting that Bulldog Erectors would provide the delivery service as part of the crane rental.

Alberici now petitions this Court for review of the AHC's decision. Because review of the AHC's decision involves construction of the revenue laws of the state, this Court has jurisdiction. Mo. Const. art. V, sections 3 and 18.

### Standard of Review

Review of a decision of the AHC is governed by section 621.189. Pursuant to section 621.193, RSMo 2000, this Court will uphold the AHC's decision when it is "authorized by law and supported by competent and substantial evidence upon the record as a whole unless clearly contrary to the reasonable expectations of the General Assembly." *Street v. Dir. of Revenue*, 361 S.W.3d 355, 357 (Mo. banc 2012) (internal quotation omitted). This Court reviews the AHC's interpretation of law *de novo*. *Id.*

4

**Cranes and Welders Are Not "Materials" Under Section 144.030.2(5)**

Alberici first challenges the AHC's decision that Alberici is not entitled to a refund of use taxes paid on the rentals of the cranes and welder. Alberici asserts that it is entitled to a refund because the rental charges for the cranes and welder are exempt from the use tax under section 144.030.2(5).

Tax exemptions are to be construed strictly, and the taxpayer claiming the exemption bears the burden of showing that it falls within the statutory language. *Aquila Foreign Qualifications Corp. v. Dir. of Revenue*, 362 S.W.3d 1, 3 (Mo. banc 2012). An exemption will be allowed only "on clear and unequivocal proof." *Id.* "Any doubt is resolved in favor of taxation." *Id.*

Missouri law imposes a use tax for "the privilege of storing, using or consuming within this state any article of tangible personal property." Section 144.610, RSMo 2000. Certain types of personal property, however, are exempt from the imposition of this tax. *See* section 144.615. One such exemption is found in section 144.030.2(5),[3] which applies to:

> Machinery and equipment, and parts and the materials and supplies solely required for the installation or construction of such machinery and equipment, purchased and used to establish new or to expand existing manufacturing, mining or fabricating plants in the state if such machinery and equipment is used directly in manufacturing, mining or fabricating a product which is intended to be sold ultimately for final use or consumption[.]

---

[3] Section 144.030.2 provides exemptions from the sales tax. Section 144.615(3) makes sales tax exemptions in section 144.030.2 applicable to the use tax.

Alberici claims the cranes and welder fall within this exemption because they are "materials" under section 144.030.2(5). The director does not contest that, if the cranes and welder are "materials," the other requirements for the exemption are met: the cranes and welder solely were required for the installation or construction of machinery or equipment at the Holcim plant; the Holcim plant was a new manufacturing plant in Missouri; and the equipment installed at the Holcim plant is used directly in manufacturing cement intended to be ultimately sold for final use or consumption. The only question is whether the cranes and welder are "materials" within the meaning of section 144.030.2(5).

In interpreting a statute, this Court's primary responsibility is to "ascertain the intent of the legislature from the language used" and to give effect to that intent. *Treasurer of the State-Custodian of Second Injury Fund v. Witte*, 414 S.W.3d 455, 461 (Mo. banc 2013). "Absent statutory definition, words used in statutes are given their plain and ordinary meaning with help, as needed, from the dictionary." *Am. Healthcare Mgmt., Inc. v. Dir. of Revenue*, 984 S.W.2d 496, 498 (Mo. banc 1999).

Although section 144.030 does not define "materials," Webster's Third New International Dictionary defines "material" as:

> **1a**(1)**:** the basis matter (as metal, wood, plastic fiber) from which the whole or the greater part of something physical (as a machine, tool, building, fabric) is made . . . (2)**:** the finished stuff of which something physical (as an article of clothing) is made; . . .
> **b**(1)**:** the whole or notable part of the elements or constituents or substance of something physical . . . or not physical . . .
> **2a:** apparatus (as tools or other articles) necessary for doing or making something . . ..

6

Webster's Third New International Dictionary 1392 (1993). Alberici argues that the cranes and welder are "materials" because each is an apparatus necessary for doing or making something – specifically, for installing and constructing the cement manufacturing equipment. In arguing the cranes and welder fall within the 2a definition of "material," Alberici relies on the definition of an apparatus, which is "any compound instrument or appliance designed for a specific mechanical or chemical action or operation: MACHINERY, MECHANISM." *Id.* at 102. Alberici asserts that the cranes and welder are machinery and, therefore, apparatuses. Alberici reasons that, as apparatuses, cranes and welders fall within the definition of "material." The director agrees with Alberici that the cranes and welder at issue are machines. Cranes and welders are defined as "machines" by the dictionary,[4] and the rental agreements referred to them as "equipment" or "machines."

Nonetheless, even if the dictionary's definition of "material" includes machinery, machines such as cranes and welders do not appear to be what the legislature intended by "materials" in section 144.030.2(5). In addition to referencing "parts," "materials," and "supplies" in the phrase at issue, the legislature used the term "machinery" three times in section 144.030.2(5). Additionally, other provisions in section 144.030.2 use both "machinery" and "materials." *See* section 144.030.2(2), (4), (14), (15). The legislature's use of different terms in the same statute is presumed to be intentional. *State v. Moore*,

---

[4] A "crane" is "a machine for raising and lowering heavy weights and transporting them through a limited horizontal distance while holding them suspended." Webster's at 529. A "welder" is "a machine used in welding." *Id.* at 2594.

7

303 S.W.3d 515, 520 (Mo. banc 2010).  By using "materials" instead of "machinery," the legislature intended for "materials" to mean something different than "machinery."

Alberici argues a definition of "materials" that includes machinery such as cranes and welders would be distinct from "machinery" because "materials" is a broader category that includes "machinery."  Alberici notes that the exemption of "materials" in section 144.030.2(5) is limited to those "solely required for the installation or construction of such machinery and equipment" but that the exemption of "machinery" is not limited in the same way.  Alberici argues that because "materials" is limited and "machinery" is not, interpreting "materials" to include "machinery" would not make the term "machinery" in section 144.030.2(5) superfluous.

This reasoning is not persuasive.  When interpreting a statute, provisions in the statute are to be considered together, not read in isolation.  *Union Elec. Co. v. Dir. of Revenue*, 425 S.W.3d 118, 122 (Mo. banc 2014).  Section 144.030.2(2), another provision of the statute, exempts "*[m]aterials*, manufactured goods, *machinery* and parts" that become component parts of property.  (Emphasis added).  If "materials" includes machinery, the legislature's use of the term "machinery" in section 144.030.2(2) would be unnecessary.[5]  This Court presumes "that the legislature did not insert idle verbiage or superfluous language in a statute."  *Hyde Park Hous. P'ship v. Dir. of Revenue*, 850 S.W.2d 82, 84 (Mo. banc 1993).

---

[5] Similarly, Alberici's interpretation would render the term "machinery" unnecessary in section 144.054.2, which includes an exemption for certain "energy sources, chemicals, *machinery*, equipment, and *materials*."  (Emphasis added).

8

Additionally, the legislature's intended meaning of "materials" is informed by the other words in the phrase at issue. Under the principle known as *noscitur a sociis*, this Court will "look[] to the other words listed in a statutory provision to help it discern which of multiple possible meanings the legislature intended." *Union Elec. Co.*, 425 S.W.3d at 122. The term "materials" in section 144.030.2(5) appears in the phrase "parts and the materials and supplies solely required for the installation or construction of such machinery and equipment." The nature of the other words used in this phrase conflicts with the nature of machinery such as cranes and welders. Even if cranes and welders fell within the dictionary's alternative definition of "material," they are not what the legislature intended by "materials" in section 144.030.2(5). Consequently, Alberici is not entitled to an exemption under section 144.030.2(5).

### Delivery Charge Is Not a Taxable Part of the Sale

In its second point, Alberici asserts the AHC erred in finding it is not entitled to a refund of the use taxes paid on the $15,000 charge for Bulldog Erectors to deliver one of the cranes to the job site. As with the tax exemption, Alberici bears the burden of proving it did not owe use taxes on the delivery charge and, therefore, is entitled to a refund. *See* section 621.050, RSMo 2000; *Hewitt Well Drilling & Pump Serv., Inc. v. Dir. of Revenue*, 847 S.W.2d 795, 797-98 (Mo. banc 1993).

The amount of use taxes imposed is "equivalent to the percentage imposed on the sales price in the sales tax law in section 144.020." Section 144.610, RSMo 2000. "Sales price" is defined as "the consideration including the charges for services . . . paid or given, or contracted to be paid or given, by the purchaser to the vendor for the tangible

9

personal property, including any services that are a part of the sale . . ..".[6] Section 144.605(8), RSMo 2000.

Alberici asserts that the $15,000 charge for Bulldog Erectors to deliver one of the cranes is not a part of the taxable sales price because the vice president testified that he believed Alberici had the option of selecting a third-party carrier and because the delivery charge was separately stated. In support of this argument, Alberici relies on the director's regulation governing the taxation of service charges. In pertinent part, 12 CSR 10-103.600 states:

> (3) Basic Application.
>
> (A) Shipping, Handling, Minimums, Gratuities and Similar Charges.
>
> 1. If the purchaser is required to pay for the service as part of the sale price of tangible personal property, the entire sale price is subject to tax.
>
> 2. If the purchaser is not required to pay the service charge as part of the sale price of the tangible personal property, the amount paid for the service is not subject to tax if the charge for the service is separately stated. If the charge for the service is not separately stated, the entire sale price is subject to tax.

Alberici interprets this regulation to exclude a delivery charge from the taxable sales price when the charge is not required to be paid as part of the sales price and is stated separately.

Alberici's interpretation of the regulation misdirects the inquiry, however, by focusing the inquiry on whether it was required to pay the service charge "as part of the

---

[6] While cases discussing whether a delivery charge is taxable have involved the sale of property, a "sale" under section 144.605(7), RSMo 2000, includes "any transfer . . . of . . . the right to use" tangible personal property. The crane rental, therefore, is a "sale" under section 144.605(7), RSMo 2000.

sales price." Taxability does not depend on whether the parties intended the charge for the service to be part of the sales *price*; taxability depends on whether the parties intended the provision of the service to be part of the sales *transaction*. The legislature intended the charge for the service to be taxable if the service is part of the sale. *See* section 144.605(8), RSMo 2000. It is at odds with that intent to determine the issue of taxability by how the "charge" for the service is stated rather than by whether the service was intended by the parties to be part of the sale transaction.

In determining whether a delivery charge is a part of the sale transaction, "the intention of the parties is the guiding factor." *May Dep't Stores Co. v. Dir. of Revenue*, 791 S.W.2d 388, 389 (Mo. banc 1990). This Court has identified a number of factors relevant to the determination of whether a delivery service was intended to be a part of the sale, including "when title passes from the seller to the buyer, whether delivery charges are separately stated, who controls the cost and means of delivery, who assumes the risk of loss during delivery, and whether the seller derives financial benefit from the delivery." *S. Red-E-Mix Co. v. Dir. of Revenue*, 894 S.W.2d 164, 167 (Mo. banc 1995). This list is not an exclusive list of factors, and "[t]he weight to be given any factor . . . is largely a function of the fact finder." *Id.*

In this case, the factor regarding when title passes has little relevance because this case involves a rental rather than a sale of the crane. Consideration of other relevant factors, however, shows that the parties intended the delivery service to be a part of the crane rental. The preprinted language on the rental agreement between Alberici and Bulldog Erectors states that the lessee will arrange and pay for shipping the crane to the

11

job site and that the lessee bears the risk of loss or damage to the crane during delivery. This preprinted language indicates that the lessee normally has the option of using a third-party carrier. On the other hand, the agreement also contains a typewritten price for inbound and outbound transportation. While the agreement did not expressly obligate Alberici to pay for a delivery service, the listing of these charges signals that the parties agreed at the time of contracting that Bulldog Erectors would deliver the crane for a charge of $15,000. In interpreting the equivocal terms of the rental agreement, this Court may consider the surrounding circumstances, including the parties' own interpretation of the agreement. *See Graham v. Goodman*, 850 S.W.2d 351, 355 (Mo. banc 1993). Bulldog Erectors' delivery of the crane and Alberici's payment of the $15,000 charge to Bulldog Erectors within 16 days after the date of the agreement suggest that the parties interpreted the rental agreement as obligating Bulldog Erectors to deliver the crane and Alberici to pay Bulldog Erectors for a delivery service as a part of the rental.

Alberici had the burden of showing the parties did not intend the delivery service to be a part of the crane rental. While there was testimony that Alberici's vice president believed that delivery usually was separate and that Alberici had the option of selecting a third-party carrier, Alberici did not present any evidence to show that the parties actually negotiated the delivery service separately from the crane rental or otherwise intended the service to be separate.

Rather, in addition to the inclusion of the $15,000 charge for a delivery service in the rental agreement and Alberici's payment of the charge 16 days after the date of the agreement, other evidence supports a finding that the parties intended the delivery service

12

to be a part of the crane rental. The $15,000 charge for delivery was paid to Bulldog Erectors rather than a third-party carrier, so Bulldog Erectors obtained any or all financial benefit from the fee for delivering the crane. Additionally, Alberici and Bulldog Erectors executed two rental agreements that included separately stated inbound and outbound transportation charges of $15,000 each. Of these four charges, however, Alberici is claiming only one of those $15,000 charges is not taxable. These other charges undercut Alberici's argument that the one delivery charge is not taxable because the parties did not intend to include delivery as part of the rental.

In support of its position, Alberici cites this Court's holding, in *Brinson Appliance, Inc. v. Director of Revenue*, that a delivery charge collected by an appliance seller was not taxable, in part, because the cost and means of delivery were entirely up to the customers. 843 S.W.2d 350, 352 (Mo. banc 1992). In *Brinson*, the seller had a practice of arranging delivery from a group of third-party carriers upon request by the customer and collecting the delivery charge before paying it to the third-party carrier. *Id.* Customers had the option of taking the appliance from the store, hiring a carrier, or using a carrier selected by the seller. *Id.* The facts that the seller merely was an intermediary in the delivery service and received no financial benefit from the delivery fee stand in contrast to the facts of this case. And while, like the customers in *Brinson*, Alberici had the option of selecting an alternative means of delivery, the rental agreement between the parties shows that it did not exercise that option and, instead, contracted with Bulldog Erectors for delivery of the crane.

13

As the taxpayer, Alberici bore the burden of proving the $15,000 delivery charge was not subject to use tax because the parties intended at the time of contracting that the delivery service would be separate from the crane rental. Alberici failed to do so. Rather, there is substantial and competent evidence supporting the AHC's finding to the contrary.

## Conclusion

Because the term "materials" in section 144.030.2(5) does not include machinery such as cranes and welders, the AHC's finding that Alberici is not entitled to an exemption of use tax under section 144.030.2(5) is supported by substantial and competent evidence. Additionally, there is substantial and competent evidence supporting the AHC's finding that it was Alberici's and Bulldog Erectors's intention that the delivery service be a part of the crane rental and, therefore, that the $15,000 delivery charge was subject to the use tax. Accordingly, the decision of the AHC is affirmed.

_____
PATRICIA BRECKENRIDGE, JUDGE

All concur.

14