COLLECTOR OF REVENUE OF ST. LOUIS, Missouri, Respondent,

v.

PARCELS OF LAND ENCUMBERED WITH DELINQUENT TAX LIENS LAND TAX SUIT 178, Defendants,

v.

BJLIK, Inc., Appellant.

No. ED 104962

Missouri Court of Appeals, Eastern District, DIVISION TWO.

FILED: November 21, 2017

FOR APPELLANT: Jack B. Spooner, 34 N. Brentwood Blvd., Suite 210, St. Louis, Missouri 63105.

For Respondent: James A. Michaels, 1114 Market Street, Ste. 759, St. Louis, MO 63101, Sheriff—City of St. Louis, Attn: Joseph V. Neil, 10 North Tucker, St. Louis, Missouri 63102, PJMW Enterprises, Inc., Thomas Carnes, 3827 Gustine Avenue, St. Louis, Missouri 63116, ALPS, LLC, Law Office of Ira M. Berkowitz, 500 N. Skinker Blvd., St. Louis, Missouri 63130, MSD, Attn: Kennethy D. Goins, P.O. Box 56580, St. Louis, Missouri 63103, ALPS, LLC, Law Offices of Jonathan P. Beck, 3500 Magnolia Avenue, St. Louis, Missouri 63156, Michael O'Reilly, Attorney for the Collector of Revenue, P.O. Box 56580, St. Louis, Missouri 63156, James Wright III, c/o James W. Davis, Bick & Kistner PC, 324 North Kirkwood, Suite 210, St. Louis, Missouri 63122, Collector of Revenue, Attn: T. Alphonso Taborn, 625 North Euclid, Suite 320G, St. Louis, Missouri 63108, City of St. Louis, Attn: Rory P. O'Sullivan, City Hall, Room 314, St. Louis, Missouri 63101, Missouri Department of Revenue, Attn: Michael S. Kisling, P.O. Box 854, Jefferson City, Missouri 65105.

ROY L. RICHTER, Judge

BJLIK ("Appellant") appeals from the Amended Order to Pay Out Excess Funds and Final Judgment ("Amended Order and Judgment"), entered by the Circuit Court of the City of St. Louis on September 8, 2016, ruling in favor of the Sheriff and the Collector of Revenue for the City of St. Louis ("Respondents") that a child support wage withholding order has special statutory priority payment status over a previously recorded judgment lien to monies generated from the sale of real estate. We reverse and remand.

## I. Background

The facts of this case originate from a parcel of land located at 5291 Lindell Boulevard in St. Louis ("Parcel"), which was owned by James Wright, III ("Wright"). When Wright failed to pay on a contract to purchase a business from PJMW, Inc., a judgment lien was filed against Wright on the Parcel in favor of PJMW, Inc. in the amount of $251,625; it was transcribed and recorded by the Circuit Court of the City of St. Louis on November 9, 2012. Eventually, after a land tax sale took place, PJMW, Inc. was unaware that the Parcel had been sold and sold its judgment lien to the newly formed Appellant for a discounted sum of $75,000 when it was valued at more than $250,000 plus accrued interest (amounting to $322,479.84 as of August 17, 2015).

In addition to the judgment lien held by Appellant, Wright was delinquent in paying his city real estate taxes. There were other liens on the Parcel as well. In

August 2014, the circuit court entered Findings of Fact, Conclusions of Law and Order of Judgment and Decree (of Foreclosure) in Land Tax Suit 178, Cause No. 1422-LT00178 ("Foreclosure Order"), ordering the foreclosure of the real estate pursuant to the Municipal Land Reutilization Law Act, Sections 92.700 et seq., RSMo,[1] to pay delinquent property taxes that were owed to the City of St. Louis. The Collector of Revenue for the City of St. Louis ("Collector of Revenue") pursued the foreclosure order, and the Sheriff of the City of St. Louis ("Sheriff") provided notice that on July 14, 2015, a foreclosure sale would take place to auction and sell the Parcel, the proceeds of which were to be applied to satisfy foreclosure expenses and pay Wright's delinquent real estate tax bills.

On July 14, 2015, the Sheriff conducted a land tax foreclosure sale and the Parcel was sold to Alps, LLC ("Alps") for $341,000. After deducting Wright's delinquent real estate tax bills and the land tax foreclosure sale costs, fees, and expenses from the payment by Alps to purchase the property, there were remaining excess funds of more than $315,000 subject to distribution following the circuit court's confirmation of Alp's purchase of the Parcel.

Shortly after the foreclosure sale, on July 29, 2015, an Order to Withhold, recorded by the Missouri Family Support Division ("Family Support Division") was served upon the Sheriff, naming Wright as the obligor for collection of Wright's delinquent child support obligation totaling more than $60,000 at the time, from the proceeds of the land tax sale pursuant to

Section 454.505. The Family Support Division filed a Motion for Distribution of Funds the next day, on July 30, 2015, requesting a distribution from any excess funds from the sale of the Parcel in order to satisfy Wright's child support arrearage.

On August 5, 2015, Alps filed a Motion to Confirm Land Tax Sale. The next day, Appellant (which had just purchased the judgment against Wright from PJMW, Inc.) filed a Motion to Pay Out Excess Funds "up to $322,479.84," requesting a distribution from any excess funds from the sale of the Parcel to satisfy the judgment lien on the Parcel, based on the November 9, 2012 transcript judgment processed in the circuit court.

On August 17, 2015, the circuit court confirmed the sale of the Parcel to Alps. A hearing was also held on the claims to the excess funds, whereby Appellant and the Family Support Division appeared and argued their motions. Additional briefs were filed thereafter.

On June 29, 2016, the circuit court entered an Order to Pay Out Excess Funds. On September 8, 2016, the circuit court amended that order in its Amended Order to Pay Out Excess Funds and Final Judgment ("Amended Order and Judgment") and ruled the Order to Withhold asserted by the Family Support Division had payment priority from the excess funds gained from the sale of the Parcel over Appellant's previously recorded judgment lien. The trial court judgment awarded the excess funds from the land tax sale in order of priority as follows: $4,203.50 to Metropolitan Sewer District;[2] $60,446.49 to

---

1. All statutory references are to the Revised Statutes of Missouri (RSMo) 2000, as updated, unless otherwise noted.

2. The Metropolitan St. Louis Sewer District (MSD) filed a motion for payment of excess

funds to satisfy sewer liens on the Parcel, totaling $4,203.50. MSD had payment priority over Appellant and the Family Support Division without dispute, pursuant to Sections

Family Support Division pursuant to the payout order; and the remaining $250,900.29 to Appellant pursuant to its lien from the transcript default judgment. This appeal follows.

## II. Discussion

In its sole point relied on, Appellant alleges the trial court erred in ruling that Section 454.505 provided special statutory priority status to Family Support Division's withholding order to payment from funds generated by the sale of real estate over a prior in time recorded judgment lien on the same real estate that generated the funds. Appellant argues the prior in time recorded judgment lien on real estate had payment priority over the Family Support Division's order to withhold, thereby resulting in reversible error.

### A. Standard of Review

In a court-tried case such as this, the judgment of the trial court should be affirmed unless "there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law." Murphy v. Carron, 536 S.W.2d 30, 32 (Mo. banc 1976). In cases involving questions of law, "the appellate court reviews the trial court's determination independently, without deference to that court's conclusions." Moore v. Bi-State Development Agency, 132 S.W.3d 241, 242 (Mo. banc 2004).

### B. Analysis

■ Pursuant to Section 92.840.3, following confirmation of a tax sale, the proceeds of the sale are to be applied first to the costs associated with the tax sale, and then to the payment of tax bills in the order of their priority. Where there are funds remaining, after the payment of all

249.255 and 141.480. Thus, MSD's priority

tax liens, the court is to determine the other issues in the suit according to Section 92.755.

■ Judgment liens are dictated by statute. Hagemann v. Pinska, 37 S.W.2d 463, 466 (Mo. App. 1931). A judgment lien is a lien on the real estate of the person against whom the judgment is entered. Knutson v. Christeson, 684 S.W.2d 549, 552 (Mo. App. S.D. 1985); Section 511.350. Generally, a lien that is first in time is entitled to satisfaction before subsequently filed liens. Howard, Singer & Meehan v. Clayton Federal Savings and Loan Association, 578 S.W.2d 56, 57 (Mo. App. E.D. 1979). Thus, a prior recorded judgment lien has priority over any subsequent lien, unless a statute provides the subsequent lien with special priority status. See Gershman Inv. Corp. v. Duckett Creek Sewer Dist., 851 S.W.2d 765, 767-68 (Mo. App. E.D. 1993).

Here, the trial court found that the Family Support Division's Order to Withhold had special statutory priority status pursuant to Section 454.505, reasoning that the statute is not limited to the withholding of wages and extends to proceeds from the sale of real estate. Appellant argues the trial court erroneously declared or applied the law when it incorrectly interpreted the statute and that the statute's payment priority status does not apply to the Family Support Division's Order to Withhold. Thus, our analysis begins with the statute itself.

Section 454.505 provides for the issuance of payout orders for money in the hands of others which is owed to child-support obligors, and states as follows:

> In addition to any other remedy provided by law for the enforcement of support, if a support order has been entered, the director shall issue an order

payment is not part of this appeal.

directing any employer or other payer of the parent to withhold and pay over to the division, the payment center pursuant to section 454.530 or the clerk of the circuit court in the county in which a trusteeship is or will be established, money due or to become due the obligated parent in an amount not to exceed federal wage garnishment limitations. Section 454.505.1.

In statutory construction, we do not read portions of a statute in isolation, and all consistent statutes relating to the same subject matter should be construed together and read to harmonize the many parts consistently. Alberici Constructors, Inc. v. Dir. of Revenue, 452 S.W.3d 632, 638 (Mo. banc 2015). When construing a particular portion of a statute, related clauses should be considered. Marre v. Reed, 775 S.W.2d 951, 954 (Mo. banc 1989).

Accordingly, we not only look directly at the language of Section 454.505.1, but we also look to the other portions of the statute. Reading the statute as a whole provides support for Appellant's argument that the statute supports an interpretation that child support orders regarding an obligated parent's wages and income should be afforded special statutory priority status over other claims against the same wages and income while not providing the same special statutory priority status to monies generated from the sale of real estate.

First, Section 454.505 is titled "Garnishment of wages" as a way of noting that the statute provides the procedure for enforcing support orders regarding wages. Section 454.505. "The title of a legislative act is considered as part of that act and is weighed when construing the act." Sisney v. Clay, 829 S.W.2d 9, 12 (Mo. App. W.D. 1992). By limiting the title of Section 454.505 to "wages," it is clear that the legislature intended to signal that the statute was limited to the recovery of money from wages.

Next, Section 454.505.1 also refers to the "income of an obligor." Subsection 3 references "earnings or other income of each obligor," and "earnings, money due or other income." Additionally, "wages" is referred to in Subsections 7 and 10. Subsection 13 further provides a definition for "income" used in subsection 1 of the statute's "money due or other income" as "any periodic form of payment due to an individual, regardless of source, including wages, salaries, commissions, bonuses, workers' compensation benefits, disability benefits, payments pursuant to a pension or a retirement program, and interest." Section 454.505.13. "Wages" is defined in Webster's Third New International Dictionary (2002) as "a pledge or payment of usually monetary remuneration by an employer especially for labor or services usually according to contract and on an hourly, daily, or piecework basis and often including bonuses, commissions, and amounts paid by the employer for insurance, pension, hospitalization, and other benefits." We specifically note that although this definition includes even benefits, which is more than the typical amount of money ones earns in one's paycheck, this definition does not include "any money owed to the obligor," such as real estate proceeds or proceeds from the sale of capital assets, inheritances, or any of the like.

"It is presumed that the legislature intended that every word, clause, sentence, and provision of a statute have effect. Conversely, it will be presumed that the legislature did not insert idle verbiage or superfluous language in a statute." Hyde Park Housing Partnership v. Dir. of Revenue, 850 S.W.2d 82, 84 (Mo. banc 1993). We find the Missouri Legislature did not intend for "money due or other income"

to mean more than the income, wages, salaries, commissions, bonuses, workers' compensation benefits, disability benefits, payments pursuant to a pension or a retirement program, and interest that is referred to in the statute to expand beyond "income" related items and enter into the area of real estate proceeds. See Section 454.505.13.

We further note that by defining "income" and using the word "or" after "money due" rather than "and" before "other income," the legislature's intent was to limit "money due" to money originating from income from periodic payments originating from the sources as described in Section 454.505.13. Again, we see that those sources described in subsection 13 do not relate in any way to proceeds from the sale of real estate.

Thus, reading Section 454.505 and its title and subsections 1, 3, 7, 10, and 13 in harmony, we find evidence that the legislature intended to give statutory priority status for support orders regarding an obligated parent's wages and income over other claims against the same wages and income, while not providing the same special statutory priority status to money generated from anything that is owed to the obligor, such as money from the sale of real estate.

Additionally, subsection 7 of Section 454.505 sets out the statutory language that establishes the special priority status. It specifies that a support order issued pursuant to subsection 1 of this statute "shall have priority over any other legal process pursuant to state law against the same wages, . . . ." with some exceptions. Section 454.505.7. Read in context with other provisions of Chapter 454, we recognize that the enforcement of child support orders and lien rights are addressed in matters involving estates (Section 454.514), real estate (Section 454.515), motor vehi-cles, boats, motors, manufactured homes and trailers (Section 454.516), workers' compensation (Section 454.517), law suits (Section 454.518), and personal injury or negligence claims (Section 454.519), but none of these statutes provide special priority lien status. All of these statutes, however, require notice before a lien is effective. Additionally, in Sections 454.514 through 454.519, the lien attaches to proceeds held by a third party; to allow special statutory priority status to attach to the excess funds held by the Sheriff here when no similar type of proceeds held by third parties are subject to any special priority status would be contrary to this chapter's statutory scheme. If the legislature had intended to give special priority status to other sources of money beyond wages and income, such as proceeds from the sale of real estate or capital assets or inheritance, it would have provided so in Sections 454.514 through 454.519.

■ As this Court recently stated in Missouri Department of Social Services, Family Support Division v. J & J Industrial Supply, Inc.,

Section 454.505 creates the framework for employer wage withholding in satisfaction of an obligor-employee's child support obligation. The clear public policy objective reflected in the language and mechanics of [Section] 454.505 and its federal mandate (42 U.S.C. § 666) is to ensure full and timely payment of financial support for the welfare of the obligor's children.

459 S.W.3d 478, 480-81 (Mo. App. E.D. 2015) (internal citations omitted). We cannot interpret Section 454.505 to extend to money from the sale of real estate when it clearly refers to money that is considered wages, earnings, and income.

Furthermore, Section 454.515 and 454.518 provide even more support for the

legislature's intent to exclude real estate proceeds as "wages" or give special statutory priority status to real estate sales proceeds pursuant to Section 454.505. Section 454.515 titled "Order for child support, lien on real estate" provides the procedure and priority regarding a lien on real estate for past due child support. It mandates that to constitute a lien on real estate, the person or entity that is owed support must file a lien on the real estate and that the support order will be deemed a lien on the real estate as of the date filed. Section 454.515, however, does not provide any special statutory priority status to real estate. Moreover, and importantly, Wright did not own the Parcel as of the date the Order to Withhold was filed, and thus, the Order to Withhold could not create a lien on real estate. However, allowing the Family Support Division to circumvent the procedures established by the legislature to enforce support orders from real estate sales proceeds would defeat the purpose of Section 454.515 to place liens on the real estate itself.

Similarly, Section 454.518 titled "Lien on law suits, claims or counterclaims" expresses that support orders are enforceable by asserting a lien "upon any and all claims, counterclaims, or suits at law of any obligor delinquent in child or spousal support." As of the date the Family Support Division filed the Order to Withhold, the proceeds from the sale of the Parcel were subject to claims in Cause Number 1422-LT00178 to be determined pursuant to Section 92.755. The Family Support Division actually filed a claim to the excess funds on July 30, 2015, potentially creating a lien pursuant to Section 454.518. However, Section 454.518 does not provide the Family Support Division with any special statutory priority status for a lien on a claim or law suit; therefore, the judgment lien of Appellant has priority over the claim of the Family Support Division.

As evidenced, the clear language of Sections 454.513 and 454.518 provides the statutory support for Family Support Division to assert a lien or claim against the real estate and excess funds, which, in either instance, do not afford special statutory priority status to the Family Support Division's claims to the excess funds. We do not find this accidental.

In sum, the clear language of Chapter 454.505, and other sections within the same chapter, read as a whole, demonstrates the failure to provide special statutory priority status for a lien on the proceeds from the sale of real estate. Although we strongly believe in the public policy of this State to ensure that dependent children are maintained, as completely as possible, from the resources of their parents, we do not find this was the proper means of doing so in this case. Thus, we find the trial court erred in interpreting the statute's payment priority status with regard to the Family Support Division's Order to Withhold. We reverse this case and remand to the trial court with directions that the trial court enter an order consistent with this opinion. The judgment lien held by Appellant should have priority status over the Family Support Division's Order to Withhold, which was created after Appellant's judgment lien. The trial court need not give payment priority rights to the Family Support Division pursuant to Section 454.505.

### III. Conclusion

The judgment of the trial court is reversed and remanded.

Lisa P. Page, P.J., concurs

Philip M. Hess, J., concurs