

# SUPREME COURT OF MISSOURI
# en banc

BARTLETT INTERNATIONAL, INC., and )
BARTLETT GRAIN CO., L.P., )
           )
           Respondents, )
           )
v. )      No. SC95205
           )
DIRECTOR OF REVENUE, )
           )
           Appellant. )

**PETITION FOR REVIEW OF A DECISION OF
THE ADMINISTRATIVE HEARING COMMISSION**
The Honorable Sreenivasa Rao Dandamudi, Commissioner

*Opinion issued May 3, 2016*

The Director of Revenue (Director) seeks review of the Administrative Hearing Commission's (AHC) determination that Bartlett International Inc. and Bartlett Grain Co. L.P. (Bartlett) did not owe use tax on service charges it paid to install a grain conveyor at one of its grain elevators in Missouri. The Director claims that the service charges were subject to use tax because they were part of the sale of tangible personal property under section 144.605(8).[1]

---

[1] All statutory references are to RSMo Cum. Supp. 2013 unless otherwise indicated.

This Court finds that because the service charges were part of the sale of tangible personal property, those charges were subject to use tax. The AHC's decision is reversed, and the case is remanded.

## I. Factual Background

Bartlett purchased a grain dryer and a grain conveyor from GSI Group Inc. (GSI) for Bartlett's grain elevator in St. Joseph. Due to time constraints, Bartlett decided to hire outside help to install the dryer and conveyor and to fabricate any additional structures necessary to complete the grain elevator. The AHC found that Bartlett accomplished these ends through three separate transactions. In the first transaction, Bartlett purchased from GSI both the parts for the grain dryer and the services to assemble and install it. In the second transaction, GSI sold Bartlett the grain conveyor. In the third transaction, Bartlett hired a different company, CR Conveying Inc. (CRC) to fabricate a support structure and install the conveyor.[2] Only the third transaction between Bartlett and CRC is at issue here.

Bartlett's contract with CRC stated it was for "labor, materials and rentals to install customer supplied conveying" at Bartlett's grain elevator in St. Joseph. The contract delineated the transaction into five interconnected items and quoted prices for the materials and services necessary to accomplish each item. The total contract price was approximately $590,000. Bartlett properly paid use tax on all materials and rentals charged under the contract. It also paid use tax on fabrication listed under the first item

---

[2] Although the Director argued before the AHC that all three transactions were part of a single sale, both the Director and Bartlett now agree that these transactions are best characterized as three separate sales.

in the contract, which reflected the cost to create an extensive support structure for the conveyor. Bartlett did not pay use tax for any other service charges, including an engineering charge for the first item and generic labor charges for the remaining four items. The charges on which Bartlett did not accrue or pay use tax totaled approximately $330,000.

The Director conducted a sales and use tax audit of Bartlett and assessed use tax on the engineering and labor charges of the transaction between Bartlett and CRC. Bartlett appealed the assessment to the AHC. The AHC determined that the Director improperly assessed tax on the disputed charges in this transaction. The Director now seeks review of the AHC's decision.

## II. Jurisdiction and Standard of Review

Because this case involves the construction of revenue laws of the state, this Court has exclusive appellate jurisdiction under article V, section 3 of the Missouri Constitution. The decision of the AHC will be affirmed if it: (1) is authorized by law; (2) is supported by competent and substantial evidence upon the whole record; (3) does not violate mandatory procedural safeguards; and (4) is not clearly contrary to the reasonable expectations of the General Assembly. Section 621.193, RSMo 2000; *see also Tatson, LLC v. Dir. of Revenue*, 456 S.W.3d 43, 44 (Mo. banc 2015). This Court reviews the AHC's interpretation of the law *de novo*. *Tatson*, 456 S.W.3d at 44-45.

Taxing statutes must be strictly construed in favor of the taxpayer and against the taxing authority. *President Casino, Inc. v. Dir. of Revenue*, 219 S.W.3d 235, 239 (Mo. banc 2007). Tax exemptions or exclusions, on the other hand, must be strictly construed

3

against the taxpayer, and any doubt must be resolved in favor of application of the tax. *Id.* An exemption is allowed only upon clear and unequivocal proof, and any doubts are resolved against the party claiming it. *Branson Props. USA, L.P. v. Dir. of Revenue*, 110 S.W.3d 824, 825 (Mo. banc 2003). The burden is on the taxpayer seeking the exemption to show that the transaction at issue fits the statutory language exactly. *Cook Tractor Co. v. Dir. of Revenue*, 187 S.W.3d 870, 872 (Mo. banc 2006).

### III. Analysis

#### A. *Disputed Charges in the Transaction Were Part of the Sale of Tangible Personal Property*

The issue here is whether the disputed charges were subject to use tax[3] as part of the sale of tangible personal property. Section 144.605(8) defines "sales price" as "the consideration including the charges for services … paid or given, or contracted to be paid or given, by the purchaser to the vendor for the tangible personal property, including any services that are a part of the sale . . . ." It is the interpretation of the phrase "including any services that are a part of the sale" that drives the controversy in this case.

The meaning of section 144.605(8) is clear and unambiguous. Because charges for *any* services that are part of the sale of tangible personal property are included in the definition of "sales price," they are subject to use tax under section 144.610.1. *See*

---

[3] The revenue laws of this state impose a use tax for the privilege of "storing, using or consuming within this state any article of tangible personal property . . . ." Section 144.610.1, RSMo Supp. 2014. The use tax compliments the sales tax and is intended to "minimize the incentive to purchase from out-of-state sellers by equalizing the tax burden on intrastate and interstate transactions." *Street v. Dir. of Revenue*, 361 S.W.3d 355, 358 (Mo. banc 2012). The amount due for use tax must be equivalent to the percentage imposed on the sales price in the sales tax law. Section 144.610.1.

4

*Alberici Constructors, Inc. v. Dir. of Revenue*, 452 S.W.3d 632, 639 (Mo. banc 2015).

When interpreting a statute, this Court seeks to give effect to legislative intent as expressed in the plain language of the statute. *Akins v. Dir. of Revenue*, 303 S.W.3d 563, 565 (Mo. banc 2010). When the words of the statute are clear, further interpretation is unnecessary, and the Court's analysis consists of applying the plain meaning of the law to the case before it. *State v. Rowe*, 63 S.W.3d 647, 649 (Mo. banc 2002).

In determining whether a service is part of the sale of tangible personal property under section 144.605(8), the Court looks to the intent of the contracting parties. *Alberici*, 452 S.W.3d at 639. This Court has developed a number of factors that are relevant to determining the intent of the parties, including whether the service charges are separately stated.[4] *Id.*

Bartlett argues that because the service charges were all separately stated in the contract and invoices, the Court should find that the services were not part of the sale of the tangible materials. For support, Bartlett cites *May Department Stores Co. v. Director of Revenue*, 791 S.W.2d 388, 389 (Mo. banc 1990), where this Court concluded that the parties to the sale did not intend to include freight charges in the sale of the purchased goods because the parties never billed the shipping costs as part of the merchandise price.

While *May* relied almost exclusively on the factor of separately stating charges for services in reaching its conclusion, it is of little relevance here. *May* considered simple

---

[4] Other factors, not relevant here, include: when title passes from the seller to the buyer; who controls the cost and means of the performance of the service; who assumes the risk of loss during performance; and whether the seller derives financial benefit from the service. *Id.*

5

transactions, which included only the cost of the purchased goods and the service costs to ship those goods. *Id.* By stating shipping costs separately from the cost of the tangible goods, the parties in *May* showed an intent to exclude the freight charges from the sales price of the items shipped. *Id.* Conversely, the transaction between Bartlett and CRC was complicated and extensive, involving hundreds of thousands of dollars of goods and services. The contract and invoices also separately stated charges for miscellaneous materials, other specifically listed materials, labor, and rentals. Separately stating the charges for different materials and services in this case was merely a consequence of the size and complexity of the transaction, which necessitated careful bookkeeping and detailed invoices and records. Their act of separately stating these charges does not demonstrate that Bartlett and CRC intended that the engineering and labor charges were not a part of the sale of the tangible materials in their contract.

Bartlett also cites various provisions of 12 CSR 10-103.600 as further support of its argument that because the service charges were separately stated, they are not taxable.[5] Interpreting this regulation to elevate the "separately stated" inquiry to a conclusive test rather than a relevant factor in determining intent is misguided. Although separately stating charges for services is often a relevant factor in evaluating whether the parties intended for the services to be part of the sale, it is not the determinative factor. *See Alberici*, 452 S.W.3d at 639. As this Court noted in *Alberici*, the legislature intended

---

[5] 12 CSR 10-103.600 discusses the taxability of transactions that involve the sale of tangible personal property and services. Bartlett relies on 12 CSR 10-103.600(1), which indicates that, in a transaction involving both tangible goods and services, the services are not taxable if they are separate from the sale of the goods.

*any* charge for services to be taxable if the services are part of the sale. *Id.* "It is at odds with that intent to determine the issue of taxability by how the 'charge' for the service is stated rather than by whether the service was intended by the parties to be part of the sale transaction." *Id.*

This Court finds Bartlett and CRC's characterization of their transaction clearly evinced their intention to treat CRC's services as part of the sale of the tangible components of the contract. As the AHC found, the very terms of the parties' contract indicated that they conceptualized their transaction as a single sale, which included labor, materials, and rents to install the grain conveyor Bartlett had previously purchased from GSI. The services at issue here are part of the sale of tangible personal property.

### B. *Bartlett Failed to Show that the Disputed Charges of the Transaction Were Subject to a Statutory Exemption or Exclusion*

Despite finding that the services and materials were parts of a single sale under the contract, the AHC determined that the disputed charges were not subject to use tax because the materials purchased by Bartlett were negligible and were ancillary to the services. In support of this conclusion, the AHC noted that the miscellaneous materials in the contract cost less than $60,000, while labor and engineering services totaled more than $330,000.

The AHC's determination that Bartlett did not owe use tax on the disputed charges in the contract because the materials were negligible or ancillary to the services purchased is not authorized by the law. Section 144.605(8) states that the cost of *any* services included as part of the sale of tangible personal property is included in the sales

7

price. This Court has consistently held that Missouri's sales and use tax laws do not contain a *de minimis* exemption or exclusion for sales of tangible personal property when services constitute a much larger percentage of the total sales price than tangible materials. *Sneary v. Dir. of Revenue*, 865 S.W.2d 342, 347-48 (Mo. banc 1993).

Further, the AHC's conclusion that the materials purchased by Bartlett in this transaction were negligible is not supported in the record. The contract between CRC and Bartlett includes more than $50,000 in miscellaneous materials, almost $60,000 in taxable rentals, and more than $100,000 in fabrication labor on the first item alone, which Bartlett conceded was taxable as part of the sales price of tangible personal property. In all, costs that Bartlett agreed are taxable make up more than $250,000, which is more than 40 percent of the total contract price. That amount is not negligible or ancillary.

Notably, section 144.605(8) does contain an exclusion for "services rendered in installing or applying the property sold." Bartlett could have argued that the services rendered to install the conveyor parts were excluded from the sales price under this provision but did not do so. Consequently, Bartlett has not carried its burden of showing that the exclusion applies.

Although Bartlett did not specifically argue that the labor charges were not covered by the statute's exclusion, it maintains that it separately stated both installation labor and fabrication labor in its contract and invoices. This argument is not convincing. Bartlett failed to show that the disputed labor charges were for installation labor, as opposed to fabrication labor, which is not covered by the exclusion in section 144.605(8). The parties' contract specifically described the services that were included in the generic

8

labor charges that Bartlett now attempts to characterize as installation labor. Each generic labor charge consisted of not only installation labor, but also fabrication labor to create items of tangible personal property such as supports, braces, transitions, spouts, and platforms. Under section 144.605(8), fabrication labor is included in the sales price calculation. Because Bartlett has not shown how much of the amount charged under the generic labor category is actually for potentially excludable installation labor, it has not carried its burden of showing that the disputed charges are excluded from use tax.

Similarly, the disputed engineering charge is included in the calculation of the sales price by the plain language of section 144.605(8). Moreover, the parties' contract does not contain any description of the kind of services that were included in the engineering charge. As the party seeking the exclusion, Bartlett was required to show that this service met the language of the installation exclusion in section 144.605(8), exactly, but it failed to do so. *Cook Tractor Co.*, 187 S.W.3d at 872.

### C. True Object Test Does Not Apply

Bartlett finally argues that even if the services and tangible goods were part of the same sale, under the "true object" test developed by this Court and codified in 12 CSR 10-103.600, use tax was not owed on the disputed charges because the "true object" of the transaction was CRC's installation service.

The "true object" test determines "whether to treat a transaction as a taxable transfer of tangible personal property or the nontaxable performance of a service." *Sneary*, 865 S.W.2d at 345. The Court has applied this test only in cases in which the intangible element of the transaction is accompanied by or transferred through an item of

9

tangible personal property that has relatively little value on its own. *See, e.g.*, *id.*; *see also, W. Blue Print Co. v. Dir. of Revenue*, 311 S.W.3d 789 (Mo. banc 2010); *James v. TRES Computer Serv., Inc.*, 642 S.W.2d 347 (Mo. banc 1982).[6]

Bartlett argues that because CRC's installation services were the "true object" of the parties' transaction, those services should not be subject to use tax. For support, Bartlett cites *Western Blue Print*, 311 S.W.3d at 789-92 (holding that because the "true object" of Western Blue Print's business was the service of converting documents into electronic format, not the sale of compact disks, its transactions were not subject to sales tax).

But neither the "true object" test nor *Western Blue Print* applies here. Although Bartlett seeks to characterize its transaction with CRC as being only for installation services, the transaction between Bartlett and CRC was a sale of *both* substantial tangible goods *and* intangible services. Under its contract with CRC, Bartlett bought tens of thousands of dollars of raw materials, paid CRC to fabricate those materials to make permanent items of tangible personal property, and then paid CRC to assemble the grain conveyor and install it on the newly fabricated supporting structures.

The plain language of section 144.605(8) resolves the dispute in this case without having to look to the "true object" test. The statute is clear and unambiguous. By its terms, *any* services that are part of the sale of tangible personal property are taxable

---

[6] The AHC noted that the "true object" test has never been applied by this Court to a transaction like the one presented here, but it nonetheless applied the test and concluded that the "true object" of the sale was CRC's installation services, not tangible personal property.

unless the taxpayer can show that an exclusion or exemption applies.  If the contracting parties intended for the services to be part of the sale of tangible personal property, then the services are included in the sales price and are subject to use tax.  Because Bartlett and CRC intended for the materials, rentals, and labor services to be part of a single sale, the disputed charges are subject to use tax.

## IV.  Conclusion

The decision of the AHC is reversed, and the case is remanded.

_____

Mary R. Russell, Judge

All concur.

11