

# SUPREME COURT OF MISSOURI
## en banc

MYRON GREEN CORPORATION,    )
   )
            Appellant,    )
   )
v.    )
   )
DIRECTOR OF REVENUE,    )
   )
            Respondent.    )

*Opinion issued January 15, 2019*

No. SC96903

**PETITION FOR REVIEW OF A DECISION OF THE ADMINSTRATIVE
HEARING COMMISSION
The Honorable Audrey Hanson McIntosh, Commissioner**

Myron Green Corporation petitions for review of the administrative hearing commission's decision finding Myron Green liable for sales tax on food sold to employees of the Federal Reserve Bank of Kansas City in the bank's on-site cafeteria. Because Myron Green regularly sold food in the on-site cafeteria "to the public" as this term is used in Missouri's revenue code, and the bank's sales tax exemption does not extend to its individual employees, the commission's decision is affirmed.

### I. Factual and Procedural History

Myron Green Corporation operates corporate cafeterias in various businesses throughout the Kansas City metropolitan area. The Federal Reserve Bank of Kansas City

contracted with Myron Green to operate the bank's on-site cafeteria. The bank is a secure facility. As a result, public access to the cafeteria is restricted. However, anyone can purchase food from the cafeteria upon entry and access to the bank.

Myron Green entered into a "cost-plus" contract with the bank. Pursuant to the contract, the bank pays Myron Green its actual costs and expenses, plus an additional fee to compensate Myron Green for its services. Under the contract, Myron Green handles nearly all aspects of the cafeteria's operation. Myron Green purchases food from wholesale distributors and arranges for its transport to the bank. Myron Green employees stock the cafeteria, cook the food, and operate the point-of-sale system. The bank does not buy any food from Myron Green before the food is sold to the cafeteria customers, and the bank's influence is limited to setting the price customers pay for food, determining the cafeteria's hours of operation, and screening the Myron Green employees who work in the cafeteria. Customers purchase items in the bank's cafeteria similarly to any other cafeteria. Customers select the food and drink products they wish to buy then pay a cashier for those items. Customers can pay with cash or, if the customer is a bank employee, via payroll deduction. The cafeteria does not accept credit or debit cards. Approximately 80 percent of customers at the cafeteria pay via payroll deduction.

Cash payments from customers go directly to Myron Green's bank account, and the bank does not interact with those funds. The payroll deduction option allows employees to swipe their identification badges at checkout. This instructs the bank to withhold the payment amount from the employee's next paycheck. The withholding is held in a separate account at the bank. Myron Green tracks payroll deduction sales and transmits a list of all

2

such sales to the bank twice per month, aligning with the bank's pay period. At the end of each two-week pay period, the bank uses its corporate credit card to pay Myron Green the total amount deducted from employee paychecks. The bank then uses the funds in the payroll deduction holding account to reimburse itself. The cash and two payroll deduction payments do not cover the contracted monthly price the bank agreed to pay Myron Green because the cafeteria sells food below market value. Therefore, at the beginning of each month, the bank makes a third "shortfall" payment to Myron Green, which covers the remainder of the contract price for the previous month. In this way, the bank subsidizes the cost of food in the cafeteria.

The bank's purchases are exempt from Missouri sales and use tax. *See* 12 U.S.C. § 531. Believing this exemption applied to all sales transactions at the bank's cafeteria, Myron Green did not charge or collect sales tax on any products sold in the cafeteria. Following an audit, however, the director of revenue determined the cafeteria's cash sales and payroll deduction sales were taxable, finding individual customers made those purchases, not the bank. The director concluded Myron Green owed sales tax to the state of Missouri for all products sold in the cafeteria. Myron Green appealed the director's decision to the administrative hearing commission. The commission affirmed the director's tax audit findings in a published decision. Myron Green petitioned this Court directly for review.

## II. Jurisdiction

This Court has exclusive appellate jurisdiction over cases involving the construction of Missouri's revenue laws. MO. CONST. art. V, § 3. "A 'revenue law' is one that imposes,

3

amends, or abolishes a tax or fee." *Armstrong-Trotwood, LLC v. State Tax Comm'n*, 516 S.W.3d 830, 834 (Mo. banc 2017). This case presents questions requiring the interpretation of § 144.020,[1] which sets the statewide sales tax. Accordingly, this Court has exclusive appellate jurisdiction.

### III. Standard of Review

This Court reviews the commission's legal decisions *de novo*. *Shelter Mut. Ins. Co. v. Dir. of Revenue*, 107 S.W.3d 919, 920 (Mo. banc 2003). This Court will affirm a commission decision if it is supported by competent and substantial evidence on the record as a whole and is not "arbitrary, capricious, unreasonable, unlawful, or in excess of jurisdiction." *J.B. Vending Co., Inc. v. Dir. of Revenue*, 54 S.W.3d 183, 185 (Mo. banc 2001); *see also* MO. CONST. art. V, § 18.

### IV. Analysis

The primary issue before this Court is whether a third-party operator of a company cafeteria is liable for sales tax on food purchased by employees of a tax-exempt organization in that cafeteria when the organization influences pricing, sets the cafeteria's hours, and subsidizes the cost of food in the cafeteria. Myron Green argues the commission erred by upholding the director's decision to impose sales tax on sales made in the bank's on-site cafeteria. In affirming the director, the commission reached three legal conclusions: (1) the bank cafeteria regularly served meals and drinks to the public within the context of § 144.020.1(6); (2) the bank's sales tax exemption did not extend to individual employees;

---

[1] All statutory references are to RSMo 2000, as amended.

4

and (3) the commission's decision was not unexpected within the context of § 143.903. Myron Green contests each finding in its three points relied on. The Court addresses each in turn and affirms the commission's findings on each of the three separate issues.

## A. The bank cafeteria regularly served meals and drinks to the public.

Section 144.020.1 imposes a tax on sellers of tangible personal property for the privilege of engaging in that business. Any place where "meals or drinks are regularly served to the public" is subject to the tax. § 144.020.1(6). Myron Green argues the bank's highly secured nature means its cafeteria does not serve food to the public. In finding the bank's cafeteria served meals and drinks to the public, the commission relied on this Court's decision in *J.B. Vending, Co., Inc. v. Director of Revenue*, 54 S.W.3d 183 (2001).

In *J.B. Vending*, this Court rejected the argument that a company cafeteria does not serve food to the public solely because the company limits access to the cafeteria. J.B. Vending was a commercial cafeteria operator, which operated company cafeterias for 13 businesses in the St. Louis and Cape Girardeau areas. *Id*. at 184. This included tracking inventory, preparing and cooking food, and operating the point-of-sale system. *Id*. All 13 locations in which J.B. Vending operated a cafeteria restricted access to their buildings, and only those persons with a legitimate business purpose could enter. *Id*. Once inside, however, anyone could buy food from and eat in the cafeterias. *Id*. at 185. J.B. Vending argued it was exempt from the taxing provisions of § 144.020 because the secure nature of its clients buildings precluded it from selling food and drink to the public. *Id*. This Court disagreed, holding cafeterias do not become non-public for the purposes of § 144.020.1(6) merely because a third party restricts access to them. *Id*. at 187. Accordingly, J.B. Vending

5

was subject to the taxing provisions of § 144.020 because it regularly sold food and drink to the public. Myron Green is similarly situated.

Myron Green tries to distinguish this case by comparing it to *Shelter Mutual Insurance Co., v. Director of Revenue*, 107 S.W.3d 919 (Mo. banc 2003). In *Shelter*, this Court held items sold in a company cafeteria were not subject to sales tax because there was no sale "to the public" within the context of § 144.020. *Id*. at 922. There, Shelter's company headquarters had an on-site cafeteria. This Court held Shelter's cafeteria did not sell meals and drinks to the public because, *inter alia*, Shelter's main business was not operating company cafeterias. *Id*. at 922. Rather, Shelter's primary business was selling insurance. *Id.* Shelter did not "provide its dining services as 'separate and independent' of its primary business." *Id*. (internal citation omitted). Instead, "Shelter offered meals and drinks to its employees 'as an incidental but necessary undertaking' of its insurance business." *Id*. (internal citation omitted). Moreover, different from the present case and *J.B. Vending*, Shelter operated the cafeteria itself; it did not hire a commercial vendor.

Here, operating on-site cafeterias for corporate clients is Myron Green's primary business. Holding oneself out as "ready to contract for cafeteria services with any company that hires its services" means that company's cafeterias regularly serve the public regardless of whether the cafeteria is in a restricted-access building. *J.B. Vending*, 54 S.W.3d at 189. Similar to J.B. Vending, Myron Green was willing to provide its cafeteria services to any client willing to contract with it. Although the bank restricts access to the cafeteria, this was the bank's choice, not Myron Green's. Myron Green "does not limit sales to only its own employees, or even to only building employees." *Id*. Rather, Myron

6

Green stands ready "to serve those who present themselves at its cafeteria lines and serves all who appear at its cafeterias. … Any member of the public who can gain access to the building can eat in the cafeteria." *Id*. The bank's cafeteria, therefore, remains public for purposes of § 144.020 even though the bank restricts entry and access to the cafeteria. *Id*. at 187.

Finally, this Court in both *Shelter* and *J.B. Vending* highlighted the importance of a special relationship between a cafeteria operator and its customers when deciding whether that establishment serves the public. An operator's special relationship with its customers can establish the cafeteria does not regularly serve meals and drinks to the public. *Shelter*, 107 S.W.3d at 922-23. In finding Shelter's cafeteria did not regularly serve the public, this Court considered how most of the cafeteria's customers were also Shelter employees. *Id*. at 922. This special employer-employee relationship showed the cafeteria did not regularly serve the public. *Id*. at 922-23. In contrast, there is no special relationship between Myron Green and the cafeteria customers. True, most of the cafeteria's customers are bank employees, but the special relationship discussed in *Shelter* exists between employer and employee, not customer and seller. The special relationship between the bank and its employees does not extend to Myron Green and the bank employees. *See* § II(B), *infra*.

Myron Green is in the business of operating corporate cafeterias, and it has no special relationship with its customers in the bank cafeteria. Accordingly, there was competent and substantial evidence supporting the commission's finding that Myron Green's sales in the bank's cafeteria are taxable because the cafeteria regularly serves meals and drinks to the public as defined by § 144.020.1(6).

**B. The bank's sales tax exemption did not extend to individual employees.**

State law exempts from sales tax "any retail sale which the state of Missouri is prohibited from taxing pursuant to the Constitution or laws of the United States." § 144.030.1. Federal law generally exempts federal reserve banks from state taxation. *See* 12 U.S.C. § 531. Further, a 2002 letter from the director of revenue advised the bank its purchases were exempt from Missouri sales tax so long as it made purchases within the bank's exempt functions. Myron Green argues this authority renders its cafeteria sales non-taxable because the food and drink items were sold to the bank and, therefore, qualify as a "retail sale which the state of Missouri is prohibited from taxing" under federal law. § 144.030.1.

Whether Myron Green's food sales are exempt from sales tax in this case turns on the identity of the purchaser. Myron Green argues the bank purchased food and drink products from Myron Green, while the director argues the individual customers purchased food directly from Myron Green. A purchaser of goods is the one who exercises dominion and control over the thing purchased. *Becker Elec. Co., Inc. v. Dir. of Revenue*, 749 S.W.2d 403, 407 (Mo. banc 1988). Myron Green argues the bank exercised dominion and control over the food because the bank stores the food, influences pricing, and sets the cafeteria's hours. The commission correctly rejected this view, however, because the bank's overall transaction structure and payment schedule with Myron Green is not compatible with the bank exercising dominion over the food.

A party exercises dominion over property by determining the "utilization of the purchased property, including how, where, and when the property was to be used." *Olin*

8

*Corp. v. Dir. of Revenue*, 945 S.W.2d 442, 444 (Mo. banc 1997). To the extent the bank exercised any control over the food, it was limited to establishing prices and the cafeteria's hours of operation. The bank had little influence over "how, where, and when" the purchased food was used.[2] *Id*. Rather, cafeteria customers made these decisions. Cafeteria customers decided which food products to purchase and when and where the food products would be used and consumed. It was cafeteria customers, therefore, not the bank, exercising dominion over the food products and purchasing the goods sold by Myron Green.

Myron Green also attempts, but fails, to analogize this case to *Canteen Corp. v. Goldberg*, 592 S.W.2d 754 (Mo. banc 1980). In *Canteen*, a commercial food service provider sold food to a retirement home, which resold the food to its residents. This Court deemed the retirement home to be the purchaser in that scenario. *Id*. at 756. Myron Green argues the bank is no different from the retirement home. The distinction, however, lies in the fact the retirement home bought and paid for the food before serving it to its residents. *Id*. In contrast, the bank did not pay Myron Green in advance for any food stocked in its cafeteria. Rather, Myron Green bought the food from wholesale distributors and arranged for the wholesaler to transport, deliver, and store all supplies at the bank until Myron Green employees prepared and served it to the cafeteria's customers. Further, Myron Green maintained control over the inventory after the wholesaler delivered the food to Myron

---

[2] Prior to sale to cafeteria customers, Myron Green - not the bank - exercised dominion over the food products. Myron Green's employees devised the cafeteria's menus, prepared all the food, filled orders, and operated the cash register.

9

Green at the bank. Myron Green controlled the bank cafeteria's inventory to such an extent it could transfer supplies between the bank's cafeteria and other Myron Green facilities.

Cafeteria customers paid for their meals either with cash or by deducting the purchase price from their bank paycheck. The cash payments went directly to Myron Green, and evidence adduced at the hearing showed Myron Green tracked all payroll deduction charges and submitted a list of swipe-card transactions to the bank twice per month. Although the bank paid the contract price to Myron Green with its corporate credit card and reimbursed itself by deducting funds from its employees' paychecks, the bank effectively remitted all payroll deductions to Myron Green. In this sense, the bank merely provided an avenue through which bank employees could pay Myron Green directly by deducting funds from their bank paychecks. This payment system is incompatible with Myron Green's theory that the bank purchased food from Myron Green and resold it to cafeteria customers. Accordingly, the bank did not purchase any food from Myron Green because Myron Green exercised exclusive dominion and control over the food until the customer selected and paid for it. *Becker*, 749 S.W.2d at 407. There was competent and substantial evidence, therefore, supporting the commission's finding that Myron Green sold food to individual customers instead of to the bank.

## C. The commission's decision was not unexpected.

In its final point, Myron Green argues, if this Court affirms the commission's decision, then Myron Green should be liable for sales tax only going forward because the commission's decision was unexpected. "[A]n unexpected decision by or order of a court of competent jurisdiction or the administrative hearing commission shall only apply after the most recently ended tax period ...." § 143.903.1. A decision is unexpected when a "reasonable person would not have expected the decision or order based on prior law, previous policy or regulation of the department of revenue." *Sneary v. Dir. of Revenue*, 865 S.W.2d 342, 348 (Mo. banc 1993); § 143.903.2. A decision is not unexpected merely because a court or the commission construes a statute less favorably than a taxpayer would like. *Gate Gourmet, Inc. v. Dir. of Revenue*, 504 S.W.3d 59, 65 (Mo. banc 2016). Rather, to show a decision was unexpected, "the taxpayer must show that the result in its case '**overrules a prior case** or invalidates a previous statute, regulation or policy of the director of revenue *and* the decision was not reasonably foreseeable.'" *First Nat. Bank of Callaway Cty. v. Dir. of Revenue*, 931 S.W.2d 471, 473 (Mo. banc 1996) (quoting *Lloyd v. Dir. of Revenue*, 851 S.W.2d 519, 523 (Mo. banc 1993)) (emphasis added). This case is almost directly on point with *J.B. Vending*. Accordingly, a reasonable person could have expected the decision by the commission and this Court. *Sneary*, 865 S.W.2d at 348. Although this Court interprets "served to the public" within the context of § 144.020.1(6) differently than Myron Green would prefer, such interpretation is consistent with this Court's precedent. In addition, this Court does not overrule precedent in deciding this case today. Indeed,

11

today's decision adheres to it.  Therefore, Myron Green's sales tax liability is retroactive because the decision of the commission and this Court was not unexpected.

## V. Conclusion

For these reasons, the commission's decision is affirmed.

_____

W. Brent Powell, Judge

All concur.