

# SUPREME COURT OF MISSOURI
## en banc

BUSINESS AVIATION, LLC ) *Opinion issued July 16, 2019*
AND VAUGHN C. ZIMMERMAN, )
ET AL., )
 )
        Appellants, )
 )
v. ) No. SC97475
 )
DIRECTOR OF REVENUE, )
 )
        Respondent. )

### PETITION FOR REVIEW OF A DECISION OF THE ADMINISTRATIVE
### HEARING COMMISSION
### The Honorable Audrey Hanson McIntosh, Commissioner

Business Aviation LLC and its members (collectively, "Appellants")[1] appeal the

Administrative Hearing Commission's ("AHC") decision assessing use tax, additions to

tax, and interest against Appellants as a result of Business Aviation's purchase of an

aircraft. The aircraft was purchased in Kansas and then leased by Business Aviation to

---

[1] Business Aviation is composed of members Zimmerman Properties Construction LLC and JRV Technologies LLC. Zimmerman Properties is composed of members Vaughn Zimmerman, Robert Davidson, Matthew Zimmerman, and Justin Zimmerman. JRV Technologies is composed of one member, James Foster.

Burgess Aircraft Management LLC,[2] a common carrier in Missouri. Although the AHC found that the right to use the aircraft was transferred from Business Aviation to Burgess, it found it was not *fully* transferred for valuable consideration. As a result, the AHC determined Appellants owed the use tax.

Appellants argue they qualify for the resale use tax exemption through the interplay of sections 144.018.1(4), 144.615(3), and 144.030.2(20).[3] In particular, section 144.030.2(20) provides an exemption for sales of aircraft to common carriers. Further, to constitute a "sale," the right to use the aircraft must be transferred for valuable consideration paid or to be paid. *See* section 144.605(7), RSMo 2000 (use tax definition of "sale"); section 144.010.1(9) (sales tax definition of "sale"). Because Business Aviation transferred the right to use the aircraft to a common carrier for valuable consideration paid or to be paid, the lease agreement constituted a sale pursuant to both the use and sales tax definitions. Accordingly, Appellants qualify for the resale exemption. The AHC's decision is reversed, and the matter is remanded.

**Background**

Business Aviation purchased an aircraft from Cessna Finance Corporation in Kansas. That same day, Business Aviation entered into an aircraft lease agreement with Burgess, a common carrier that provides Part 135 air charter transportation services to

---

[2] Burgess is owned by Mark Burgess.
[3] All statutory references are to RSMo Supp. 2010, unless otherwise specified.

third parties. [4]   Burgess transported the aircraft from Cessna to Burgess' site of operations in Missouri.

Pursuant to the lease agreement, Burgess was granted "the exclusive care, custody and control of the Aircraft during the term of [the Lease] and at all times during any Part 135 charter operations conducted by [Burgess]." Further, Burgess was required to perform all maintenance pursuant to Part 91. [5]  Burgess was also to manage the aircraft, maintain necessary records, and provide pilots and supplies necessary for the aircraft to operate in accordance with Federal Aviation Act regulations. Business Aviation was to pay all costs for maintenance, insurance, management, cleaning, and repairs, as well as the hangar fees.

The lease further provided in section three:

(c) As consideration for this Lease and use of the Aircraft, [Burgess] shall pay [Business Aviation] the sum of $900.00 per hour based on the Hobbs meter (lift off to touch down) (the "Hourly Rate"), payable on the fifteenth (15th) day of the month immediately following the month in which such hours were operated (the "Lease Payments"), payable in advance on the first Business Day of each month thereafter during the Term.

(d) All lease payments and other amounts payable by [Burgess] hereunder shall be net to [Business Aviation], and free and clear of all deductions, taxes and withholdings of any nature whatsoever, except any amounts due [Burgess] from [Business Aviation] as provided herein.

---

[4] *See* 14 C.F.R. §§ 135.1, et. seq. As an air carrier, Burgess had management over the operation of the aircraft in accordance with Part 135.
[5] *See* 14 C.F.R. §§ 91.1, et. seq. Part 91 flights are not for hire but include flights for maintenance and repositioning of an aircraft.

Although the lease also provided Business Aviation was required to pay all costs and expenses related to its operation of the aircraft if it chartered or used it, Business Aviation never operated or chartered the aircraft.

Burgess prepared and provided to Business Aviation monthly financial summaries, which included charges billed to Business Aviation as well as income credited to Business Aviation for Burgess' use of the aircraft. When parties other than Zimmerman Properties and Foster chartered the aircraft, Burgess paid Business Aviation $900 per flight hour. When Zimmerman Properties or Foster chartered the aircraft, they paid Burgess only $434.77 per flight hour, and Burgess then paid that same amount to Business Aviation.

The director determined Business Aviation owed use tax of $75,674.41 and issued this assessment to Business Aviation, Foster, and Zimmerman Properties as well as to each of Zimmerman Properties' members. Business Aviation appealed the director's assessment of the use tax to the AHC.[6]

The AHC found that although Burgess was a common carrier, Business Aviation was not entitled to the use tax exemption because Business Aviation's lease agreement was not a sale for purposes of that exemption. Specifically, the AHC found that although the right to use the aircraft was transferred from Business Aviation to Burgess, it was not

---

[6] The case was consolidated with those of Foster, Zimmerman Properties, Davidson, Vaughn Zimmerman, Matthew Zimmerman, and Justin Zimmerman.

*fully* transferred for valuable consideration.  Business Aviation petitioned this Court for

review of the AHC's decision.[7]

## Standard of Review

This Court will affirm a decision of the AHC if it: (1) is authorized by law; (2) is

supported by competent and substantial evidence on the whole record; (3) does not

violate mandatory procedural safeguards; and (4) is not clearly contrary to the General

Assembly's reasonable expectations.  *Brinker Mo., Inc. v. Dir. of Revenue*, 319 S.W.3d

433, 435 (Mo. banc 2010) (citing section 621.193).  The AHC's interpretation of revenue

statutes receives *de novo* review.  *Union Elec. Co. v. Dir. of Revenue*, 425 S.W.3d 118,

121 (Mo. banc 2014).

Exemptions are "strictly construed against the taxpayer," and any doubt is

resolved in favor of assessing the tax.  *Bartlett Int'l, Inc. v. Dir. of Revenue*, 487 S.W.3d

470, 472 (Mo. banc 2016).  The taxpayer must demonstrate by "clear and unequivocal

proof" that an exemption applies.  *TracFone Wireless, Inc. v. Dir. of Revenue*, 514

S.W.3d 18, 21 (Mo. banc 2017).

## Analysis

The issue in this case is whether Business Aviation's purchase of the aircraft

qualifies for a resale tax exemption as provided in section 144.018.1(4), which exempts

sales for resale if the subsequent sale would be otherwise exempt under chapter 144.

Appellants argue the purchase qualifies for this resale exemption through the use tax

---

[7] This Court has jurisdiction under article V, section 3 of the Missouri Constitution, as the case involves the construction of the state's revenue laws.

exemption in section 144.615(3), which cross-references to an exemption in section 144.030.2(20) for "[a]ll sales of aircraft to common carriers for storage or for use in interstate commerce." Pursuant to this interplay of statutes, Business Aviation's purchase of the aircraft qualifies for this resale tax exemption if the lease agreement transferred the right to use the aircraft for consideration paid or to be paid. *See* section 144.605(7), RSMo 2000; section 144.010.1(9).

A use tax is imposed on tangible personal property purchased outside of Missouri and then used within the state if the purchase would have been subject to sales tax had it occurred in-state. Section 144.610, RSMo 2000; *Fall Creek Const. Co. v. Dir. of Revenue*, 109 S.W.3d 165, 169 (Mo. banc 2003). "Purchase" is defined as "the acquisition of the ownership of, or title to, tangible personal property, through a sale, as defined herein, for the purpose of storage, use or consumption in this state." Section 144.605(5), RSMo 2000. An aircraft is an item subject to the Missouri sales tax and, accordingly, is tangible personal property. *Five Delta Alpha, LLC v. Dir. of Revenue*, 458 S.W.3d 818, 821 (Mo. banc 2015) (citing section 144.605(11), RSMo 2000). Because Business Aviation purchased the aircraft from Cessna in Kansas for use within Missouri, the aircraft is subject to use tax unless Appellants can show they qualify for an exemption.

Section 144.018.1(4) outlines exemptions from sales and use tax for tangible personal property purchased for resale and provides in pertinent part:

1. Notwithstanding any other provision of law to the contrary ... when a purchase of tangible personal property or service subject to tax is made for

6

the purpose of resale, such purchase shall be either exempt or excluded under this chapter if the subsequent sale is: ...

(4) Subject to tax but exempt under this chapter[.]

Section 144.615 lists use tax exemptions, providing:

There are specifically exempted from the taxes levied in sections 144.600 to 144.745: ...

(3) Tangible personal property, the sale or other transfer of which, if made in this state, would be exempt from or not subject to the Missouri sales tax pursuant to the provisions of subsection 2 of section 144.030[.]

Section 144.030.2(20) exempts from sales and use tax "[a]ll sales of aircraft to common carriers for storage or for use in interstate commerce."

It is not disputed that Business Aviation purchased the aircraft and then entered into an aircraft lease agreement with Burgess, a Missouri common carrier. Accordingly, if the lease agreement was a sale pursuant to this statutory scheme, Business Aviation would be exempt from use tax on the aircraft.

Because Business Aviation claims a *use* tax exemption pursuant to section 144.615(3), which cross-references section 144.030.2 (a list of exemptions in the *sales* tax portion of the statute), Business Aviation must prove there was a sale to Burgess under both the use *and* sales tax definitions of "sale."[8] The use tax definition of "sale," section 144.605(7), RSMo 2000, provides in pertinent part:

"Sale," any transfer, barter or exchange of the title or ownership of tangible personal property, or the right to use, store or consume the same, for a

_____

[8] There are two definitions of "sale" in the revenue statutes. One is found in section 144.605(7), RSMo 2000, under the "Use Tax" heading and applies to sections 144.600 through 144.745. The other is found in section 144.010.1(9) under the "Sales Tax" heading and applies to sections 144.010 through 144.525. The definitions of "sale," though similar, have different requirements.

7

consideration paid or to be paid, and any transaction whether called leases, rentals, bailments, loans, conditional sales or otherwise, and notwithstanding that the title or possession of the property or both is retained for security.

In other words, the use tax definition of a "sale" requires "(1) a transfer, barter or exchange; (2) of the title or ownership of tangible personal property or the right to use, store or consume the same; (3) for a consideration paid or to be paid." *Brambles Indus., Inc. v. Dir. of Revenue*, 981 S.W.2d 568, 570 (Mo. banc 1998). Accordingly, to qualify as a sale pursuant to the use tax definition in section 144.605(7), Business Aviation must prove the lease agreement transferred to Burgess the right to use the aircraft for consideration paid or to be paid.

In addition, the sales tax definition of "sale" in section 144.010.1(9) must also be considered. It provides in pertinent part:

"Sale" or "sales" includes installment and credit sales, and the exchange of properties as well as the sale thereof for money, every closed transaction constituting a sale, and means any transfer, exchange or barter, conditional or otherwise, in any manner or by any means whatsoever, of tangible personal property for *valuable consideration* ….

(Emphasis added). Because the transfer can be "in any manner or by any means whatsoever," *id.*, a lease can qualify as a sale. *See* 12 CSR 10-108.700(2)(A) (defining "lease" as "*any transfer* of the right to possess or use tangible personal property for a term in exchange for consideration" (emphasis added)). But under the sales tax definition of "sale," the transfer must be for valuable consideration.

When the definitions of "sale" for both use tax (section 144.605(7)) and sales tax (section 144.010.1(9)) are read together, to qualify as a sale for the use tax exemption in

8

section 144.615(3), which cross-references section 144.030.2, Business Aviation must prove the right to use the aircraft was transferred to Burgess for valuable consideration paid or to be paid.

*I. Whether the Right to Use Was Transferred*

In determining whether the right to use was transferred, this Court looks to the statutory definition of "use." "Use" is defined as:

> [T]he exercise of *any right or power* over tangible personal property incident to the ownership or control of that property, except that it does not include the temporary storage of property in this state for subsequent use outside the state, or the sale of the property in the regular course of business[.]

Section 144.605(13), RSMo 2000 (emphasis added). As the evidence reflected and the AHC determined, the right to use was transferred because "Business Aviation transferred complete operational and maintenance control of the [aircraft] to Burgess."[9] Pursuant to the lease agreement, Burgess was granted "the exclusive care, custody and control of the Aircraft during the term of [the Lease] and at all times during any Part 135 charter operations conducted by [Burgess]." In fact, each time the aircraft was flown, Burgess maintained exclusive custody and control. When the aircraft was not being flown it was

---

[9] But the AHC also held that the aircraft was not *fully* transferred because valuable consideration was not paid and concluded, therefore, Appellants were not entitled to the exemption. The AHC decision relied on *Five Delta Alpha*, a case with similar facts, in which this Court examined whether a lease agreement between a lessor and a common carrier transferred the right to use an aircraft. 458 S.W.3d at 822. *Five Delta Alpha* held the lessor was exempt from use tax because the "right of the aircraft's use was *fully* transferred" to the common carrier. *Id.* (emphasis added). The Court gave no explanation why "fully" was inserted before the word "transferred" or how that requirement can be satisfied. Chapter 144 and previous case law do not require the right to use to be "fully" transferred for a lease to constitute a sale. The use and sales tax definitions of "sale" provide only that a "transfer" must exist to constitute a sale under chapter 144. *See* section 144.605(7), RSMo 2000; section 144.010.1(9). To the extent *Five Delta Alpha* requires the right to use to be *fully* transferred, it is overruled.

9

stored at Burgess' hangar facility.  Accordingly, Business Aviation transferred the exercise of right and power over the aircraft. The AHC did not err in determining that the right to use the aircraft was transferred from Business Aviation to Burgess.[10]

## II.  *Whether Valuable Consideration Was Paid or to Be Paid*

In determining there was not valuable consideration, the AHC emphasized Burgess did not always pay the exact price per flight hour as stated in the lease agreement when Zimmerman Properties and Foster chartered the aircraft.  Appellants argue the AHC erred in this determination because valuable consideration does not require payment of the exact price stated in the lease agreement.

"Valuable consideration" is not defined in the tax statutes.  A word not defined in a statute is given its ordinary meaning pursuant to the dictionary. *Asbury v. Lombardi*, 846 S.W.2d 196, 201 (Mo. banc 1993).  Valuable consideration is defined as "an equivalent or compensation having value that is given for something (as money, marriage, services) acquired or promised and that may consist either in some right, interest, profit, or benefit accruing to one party or some responsibility, forbearance, detriment, or loss exercised by or falling upon the other party." *Webster's Third New International Dictionary* 2530 (2002).  The definition in Black's Law Dictionary is similar:  "Consideration that is valid under the law; consideration that either confers a

---

[10] The director, agreeing with the AHC albeit for different reasons, argues the right to use was not *fully* transferred from Business Aviation to Burgess asserting several ways Business Aviation potentially maintained a right to use the aircraft during the term of the lease agreement. As previously stated, chapter 144 and precedent do not require that the right to use be *fully* transferred.  Accordingly, this Court need not address these arguments.

pecuniarily measurable benefit on one party or imposes a pecuniarily measurable detriment on the other." Valuable Consideration, *Black's Law Dictionary* (10th ed. 2014).

When Zimmerman Properties and Foster chartered the aircraft, they paid Burgess only $434.77 per flight hour, a discounted rate. Similarly, Burgess paid Business Aviation only $434.77 – rather than the $900 provided for in the lease agreement – for flight hours when Zimmerman Properties and Foster chartered the aircraft. In the monthly summaries, $434.77 per flight hour is reflected as paid from Burgess to Business Aviation for charters by Zimmerman Properties or Foster. In other words, the amount owed to Burgess by Zimmerman Properties or Foster and the amount owed to Business Aviation by Burgess were effectively canceled out. But the definition of valuable consideration does not require checks to exchange hands, nor does it require the amount paid to be the exact amount stated in the lease agreement. Indeed, consideration does not require the showing of actual benefit. *Moore v. Seabaugh*, 684 S.W.2d 492, 496 (Mo. App. 1984). Burgess' credit to Business Aviation in exchange for Burgess' use of the plane is both valid compensation and a pecuniarily measurable benefit as required by the definition of valuable consideration.

The director emphasizes that Business Aviation's hourly flight costs to operate the aircraft were approximately $595 per flight hour, resulting in lost money each time

11

Zimmerman Properties or Foster chartered the plane.[11] Valuable consideration does not require a showing of profit, and courts are not in a position to estimate the value or determine the adequacy of consideration. *Brown v. Weare*, 152 S.W.2d 649, 653-54 (Mo. 1941) ("[I]t is the policy of the law not to weigh the quantum of consideration, but, refraining from the inference with the freedom of contract, suffer the parties to exercise freely their judgment and will in consummating agreements and determine for themselves the benefits derived from their bargains.").

The monthly summaries indicate Burgess paid an amount – sometimes $900 per flight hour and sometimes $434.77 per flight hour – in exchange for its use of Business Aviation's aircraft. Valuable consideration does not compel a certain amount to be paid, nor does it require the exact amount stated in the lease agreement to be paid. Accordingly, the AHC erred in determining that Burgess did not pay valuable consideration to Business Aviation for the use of the aircraft.

---

[11] But approximately 43 percent of the flight hours were a result of charters by entities that did not receive a discounted rate, and Burgess paid Business Aviation the full $900 lease price for these flight hours.

## Conclusion

Because Business Aviation transferred to Burgess the right to use the aircraft for valuable consideration paid or to be paid, Appellants qualify for the resale tax exemption pursuant to the interplay of sections 144.018.1(4), 144.615(3), and 144.030.2(20).  The AHC's decision is reversed, and the matter is remanded.[12]

_____
Mary R. Russell, Judge

All concur.

_____

[12] Because this Court holds that Appellants qualify for the use tax exemption, it need not address Appellants' argument that the AHC erred in determining Appellants were liable for an additional penalty in failing to file their tax returns.

13