

# SUPREME COURT OF MISSOURI
## en banc

CARFAX, INC.,       )    *Opinion issued September 13, 2022*
                        )
           Respondent,    )
                        )
v.                             )    No. SC99367
                        )
DIRECTOR OF REVENUE,     )
                        )
            Appellant.     )

### PETITION FOR REVIEW OF A DECISION OF THE
### ADMINISTRATIVE HEARING COMMISSION
The Honorable Renee T. Slusher, Commissioner

The Director of Revenue seeks review of the Administrative Hearing

Commission's ("AHC's") decision that the purchases by Carfax, Inc. ("Carfax"), of

certain equipment (the "Disputed Equipment") used to create Vehicle History Reports

("VHRs") were exempt from sales and use taxes under sections 144.030.2(5)[1] and

144.054.2 because Carfax used such equipment to "manufacture" VHRs.  This Court

holds that Carfax does not use the Disputed Equipment to manufacture VHRs for

---

[1]  All statutory references are to RSMo 2016 unless otherwise noted.  However, *see* n.4 for an explanation as to the applicable versions of sections 144.030.2(5) and 144.054.2.

purposes of these statutes. Accordingly, the AHC's decision is vacated, and the cause is remanded for further proceedings consistent with this opinion.

**Background**

Carfax is in the business of selling VHRs to consumers and car dealers. A VHR is a report generated for a specific vehicle providing information about that vehicle's history, such as ownership and title history, mileage information, accident history, previous maintenance and repairs, and manufacturer recall notices. A VHR also may include Carfax's own insights, including how much previous owners drove the vehicle compared with the industry average, explanations of confusing title information, whether a vehicle was located in an area where flooding occurred, and whether the vehicle's oil changes followed the manufacturer's recommendations.

To create a VHR, Carfax first obtains as much raw data as it can from approximately 112,000 sources, including sources such as state departments of motor vehicles, state police databases, manufacturers, car dealers, after-market service shops, insurance companies, vehicle repair centers, auctions, inspection sites, and other sources. It stores this data in a 600-square-foot server room in Columbia, Missouri. Carfax then performs an automated data cleansing process to remove incorrect or inconsistent entries from this data. It then uses its own proprietary systems to organize and merge this new data into its database.

When Carfax receives a request for a VHR concerning a particular vehicle, it extracts only the information from its database pertaining to that vehicle. It warns customers that the VHR reflects only the data supplied to Carfax and Carfax does not

2

guarantee either that the VHR contains all of the information relevant to that particular vehicle or that the information provided is accurate. There are vehicles for which Carfax never receives a VHR request, and there are instances in which Carfax extracts multiple VHRs over time for the same vehicle. A VHR for a particular vehicle may vary from a later VHR for the same vehicle if Carfax obtained additional data in the interim.

In October 2016, the Director of Revenue notified Carfax it was selected for an audit for sales and use taxes due between 2013 and 2016. The Director determined Carfax did not use the Disputed Equipment[2] to "manufacture" VHRs; therefore, its purchase of that equipment was not exempt from sales and use taxes. Based on this determination, the Director assessed $106,161.56 in taxes and interest. That amount also included an additional five percent because the Director had audited Carfax for the years prior to 2013, rejected Carfax's argument that it owed no sales or use taxes for equipment purchased that it used to "manufacture" VHRs,[3] and there had been no material change in Carfax's operations.

Carfax appealed the Director's decision to the AHC. The AHC found Carfax's purchases of the Disputed Equipment were exempt from sales and use taxes under both

---

[2] The Disputed Equipment was itemized in an exhibit before the AHC, but it generally includes servers, networking equipment, software, SAN drives, conferencing equipment, UPS devices, workstations, and related equipment. All these items were purchased between December 12, 2013, and September 30, 2016, and all of them were used in creating VHRs, with the exception of the video conferencing equipment items that were used for intraoffice communication, education, and training.

[3] Carfax appealed this prior assessment to the AHC, which resulted in a settlement between the parties on October 31, 2016.

section 144.030.2(5) and section 144.054.2[4] because Carfax used that equipment directly in "manufacturing" VHRs.  The Director filed a petition for review with this Court pursuant to section 621.189.

**Analysis**

This Court has exclusive appellate jurisdiction in all cases involving the construction of state revenue laws, Mo. Const. art. V, § 3, and this Court's standard for reviewing AHC decisions involving sales and use (and other) taxes is well established:

> "This Court will affirm a decision of the AHC if it: (1) is authorized by law; (2) is supported by competent and substantial evidence on the whole record; (3) does not violate mandatory procedural safeguards; and (4) is not clearly contrary to the General Assembly's reasonable expectations." *Bus. Aviation, LLC v. Dir. of Revenue,* 579 S.W.3d 212, 215 (Mo. banc 2019); § 621.193; Mo. Const. art. V, § 18.  This Court does not uphold a decision of the AHC if it is "arbitrary, capricious, unreasonable, unlawful, or in excess of jurisdiction." *Myron Green Corp. v. Dir. of Revenue,* 567 S.W.3d 161, 164 (Mo. banc 2019).  This Court reviews the AHC's legal decisions *de novo. Id.*  "This Court is not bound by the [AHC]'s interpretation and application of the law." *Gervich v. Condaire, Inc.,* 370 S.W.3d 617, 620 (Mo. banc 2012).
>
> "Taxing statutes must be strictly construed in favor of the taxpayer and against the taxing authority." *Bartlett Int'l, Inc. v. Dir. of Revenue,* 487 S.W.3d 470, 472 (Mo. banc 2016).  "Tax exemptions or exclusions, on the other hand, must be strictly construed against the taxpayer, and any doubt must be resolved in favor of the application of the tax." *Id.*

*Dreyer Elec. Co., LLC v. Dir. of Revenue*, 603 S.W.3d 297, 301 (Mo. banc 2020)

(alteration in original).

---

[4]  Though the statutory language at issue appeared in slightly different subsections during the purchase period, the exact same language is now contained in sections 144.030.2(5) and 144.054.2, RSMo Supp. 2018.  Both parties appear to have cited the newer statutes in their briefs.  For ease of reference and because the language at issue remains the same, all statutory references to sections 144.030.2(5) and 144.054.2 are to RSMo Supp. 2018.

Carfax claims, and the AHC found, that its purchases of the Disputed Equipment were exempt from sales and use taxes under either section 144.030.2(5) or section 144.054.2 or both.  Section 144.030.2(5) provides certain purchases are exempt from sales (and, therefore, use) tax:

> Machinery and equipment … purchased and used to establish new or to expand existing manufacturing … if such machinery and equipment is used **directly in manufacturing** … a product which is intended to be sold ultimately for final use or consumption.

(Emphasis added).  Section 144.054.2 provides certain other purchases also are exempt from such taxes:

> [M]achinery, equipment, and materials used or consumed **in the manufacturing**, processing, compounding, mining, or producing of any product … [.]

(Emphasis added).  Accordingly, even though sections 144.030.2(5) and 144.054.2 vary in many respects, for purpose of the disputed issues in this case they are the same.  Carfax owes sales and use taxes on its purchases of the Disputed Equipment unless that equipment is used in the "manufacturing" of VHRs.  This Court holds Carfax does not "manufacture" VHRs as that word is used in these two exemption statutes; therefore, Carfax is liable for those taxes.

In interpreting section 144.030.2(5), this Court has held the term "manufacturing" encompasses only activities that "transform an input into an output with a separate and distinct use, identity, or value" from the original.  *Branson Props. USA, L.P. v. Dir. of Revenue*, 110 S.W.3d 824, 826 (Mo. banc 2003).  *See also Galamet, Inc. v. Director of Revenue,* 915 S.W.2d 331, 333 (Mo. banc 1996) ("Manufacturing" is "the alteration or

5

physical change of an object or material in such a way that produces an article with a use, identity, and value different from the use, identity, and value of the original.").

This Court has spent a great deal of time attempting to define the outer reaches of the definition of "manufacturing" in the context of section 144.030.2(5) and consistently has rejected claims when the output involved did not have a separate and distinct use, identity, or value from the input. *See Utilicorp United, Inc. v. Dir. of Revenue*, 75 S.W.3d 725, 728-29 (Mo. banc 2001) (altering voltage and amperage to facilitate transmission, distribution, and delivery of electricity was merely "'repackaging' of an existing product" because the product, electricity, had already been generated); *House of Lloyd, Inc. v. Dir. of Revenue*, 824 S.W.2d 914, 919-20 (Mo. banc 1992) (repackaging products), *overruled on other grounds by Sipco, Inc. v. Dir. of Revenue*, 875 S.W.2d 539, 541-42 (Mo. banc 1994); *L & R Egg Co. v. Dir. of Revenue*, 796 S.W.2d 624, 626-27 (Mo. banc 1990) (cleaning and inspecting eggs); *Unitog Rental Servs. v. Dir. of Revenue*, 779 S.W.2d 568, 570-71 (Mo. banc 1989) (cleaning and repairing uniforms); *State ex rel. AMF Inc. v. Spradling*, 518 S.W.2d 58, 61-62 (Mo. 1974) (retreading or recapping tires).

On the other hand, this Court has held "manufacturing" occurs for purposes of sales and use tax exemption when – but only when – equipment is used to accomplish some meaningful transformation of the input into the output such that the "separate and distinct use, identity, or value" test is satisfied. *Branson Props.*, 110 S.W.3d at 826; *see also Concord Pub. House, Inc. v. Dir. of Revenue*, 916 S.W.2d 186, 190-91 (Mo. banc 1996) (manipulating and affixing words onto a page to create a newspaper); *Jackson Excavating Co. v. Admin. Hearing Comm'n*, 646 S.W.2d 48, 51 (Mo. 1983) (treating and

purifying water); *Wilson & Co. v. Dir. of Revenue*, 531 S.W.2d 752, 754-55 (Mo. 1976) (slaughtering livestock to create marketable food); *Heidelberg Cent., Inc. v. Dir. of Revenue*, 476 S.W.2d 502, 506 (Mo. 1972) (commercial printing); *West Lake Quarry & Material Co. v. Schaffner*, 451 S.W.2d 140, 143 (Mo. 1970) (grinding, crushing, and sorting rock into various sizes for commercial use).

Here, the Court is not persuaded that what Carfax uses the Disputed Equipment to do fairly can be characterized as "manufacturing." Carfax collects data relating to untold numbers of vehicles and then extracts from it only the data relating to the vehicle for which the VHR is requested. It may annotate or explain some of that data, and may correct corrupted or plainly incorrect data as it aggregates it, but – in the end – the VHR does not (and does not purport) to do anything other than present the customer with whatever information created by others concerning the vehicle that Carfax has been able to obtain. This falls short of showing that the VHR is an "article with a use, identity, and value different from the use, identity, and value of the original" vehicle data that Carfax aggregates. *Galamet,* 915 S.W.2d at 333. The data Carfax collects is analogous to a phone book (for those old enough to remember them), and the VHRs Carfax sells are analogous to a system that provides the customer only the one particular number they want to know. It is convenient, and that convenience is both saleable and valuable, but one cannot say that extracting the one relevant phone number is a "transformation" that produces a new "article with a use, identity, and value different from the use, identity, and value of the original." *Id*. Accordingly, Carfax's purchase of the Disputed Equipment was not exempt from sales or use taxes under sections 144.030.2(5)

and 144.054.2 because Carfax did not use that equipment in the "manufacturing" of its VHRs.

As with many of the cases under sections 144.030.2(5) and 144.054.2 in which this Court is called upon to determine whether the term "manufacturing" includes activities that scarcely could have been imagined when that word first was used in these statutes, the present case is a close call. And, if the General Assembly determines Carfax's purchase of the Disputed Equipment should have been tax exempt because Carfax uses that equipment in "manufacturing" its VHRs (or any other reason the General Assembly deems sufficient), it can easily say so. But, so long as this Court is left to determine the outer reaches of terms like "manufacturing," it will – as it always has – apply the principle of strict construction to tax exemptions such that "any doubt must be resolved in favor of application of the tax." *Bartlett*, 487 S.W.3d at 472. "While statutes imposing a tax are construed strictly in favor of the taxpayer, this Court strictly construes tax exemptions against the taxpayer." *Interventional Cent. for Pain Mgmt. v. Dir. of Revenue*, 592 S.W.3d 350, 352 (Mo. banc 2019). A taxpayer bears the burden to prove an exemption applies by "clear and unequivocal proof," and "all doubts are resolved against the taxpayer." *Id.* at 353; *see also* § 621.050.2.

## Conclusion

For the reasons set forth above, the AHC's decision is vacated, and the cause is remanded for further proceedings consistent with this opinion.

_____
Paul C. Wilson, Chief Justice

All concur.

9